**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANNIE LIU,
     **Plaintiff,**

     **v.**

NORTHWESTERN UNIVERSITY,
and CLIFFORD ZIMMERMAN,
an individual,
     **Defendants.**

     **No. 14 CV 04993
Judge Sara Ellis
Magistrate Judge Susan Cox**

**DEFENDANTS' ANSWER AND
AFFIRMATIVE DEFFENSES TO PLAINTIFF'S COMPLAINT**

Defendants Northwestern University ("Northwestern" or "the University") and Clifford

Zimmerman ("Dean Zimmerman") hereby answer the Complaint of Plaintiff Annie Liu

("Plaintiff") as follows:

**Jurisdiction**

1.     This court has jurisdiction over the claims set forth in this action pursuant to 28
U.S.C. 1331 (federal question).

**ANSWER**:     Defendants admit that this Court has jurisdiction over Counts I-X of the

Complaint pursuant to 28 U.S.C. § 1331. Defendants deny the remaining allegations of

Paragraph 1.

2.     Supplemental jurisdiction over Plaintiff's pendent state law claims rests upon 28
U.S.C. 1367, since the claims arise out of the same transaction and occurrence as Plaintiff's
federal claims.

**ANSWER**:     Defendants admit that this Court has jurisdiction over Counts XI-XV of

the Complaint pursuant to 28 U.S.C. § 1367 and deny any remaining allegations of Paragraph 2.

## Venue

3.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b) because violations of the above referenced laws have taken place and continue to take place in the Northern District of Illinois and Defendants are located in this district.

**ANSWER**:     Defendants admit that Northwestern University is located in the Northern District of Illinois and that venue is proper in this district under 28 U.S.C. §1391(b). Defendants deny that they violated any law and deny the remaining allegations of Paragraph 3.

## Parties

4.     Plaintiff, Annie Liu, at all relevant times was a resident of the State of Illinois and a student at the Northwestern University School of Law ("the Law School"), a school of Northwestern University, a private university.

**ANSWER**:     Defendants admit that Northwestern University School of Law is a school within Northwestern University, a private university, and that Plaintiff has been a student at the Law School since the fall of 2011. Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Plaintiff's residency and deny any remaining allegations of Paragraph 4.

5.     Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 705(20) ("Section 504") and Title III of the Americans with Disabilities Act, 42 U.S.C. 12131(2) (the "ADA").

**ANSWER**:     Defendants deny the allegations of Paragraph 5.

6.     Defendant, Northwestern University ("the University"), in an institution of higher education duly organized and existing under the laws of the State of Illinois as an Illinois not-for-profit corporation.  The University received federal financial assistance, as defined by Section 504, 29 U.S.C. 794.

**ANSWER**:     Defendants admit that the University is a not-for-profit institution of higher education created by Charter by the State of Illinois and that the University receives

federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973.

Defendants deny any remaining allegations of Paragraph 6.

7.     The University, as an undergraduate and postgraduate private school, is a "place of public accommodation," as defined by 42 U.S.C. 12181(7)(j) and is therefore covered by the ADA.

**ANSWER**:     Defendants admit the allegations of Paragraph 7.

8.     Defendant, Clifford Zimmerman ("the Dean"), at all times relevant was the Associate Dean/Dean of Students for the Law School.  He is named in this complaint in both his individual and official capacity.

**ANSWER**:     Defendants admit the allegations in the first sentence of Paragraph 8 and further admit that Plaintiff purports to allege claims against Defendant Zimmerman in his individual capacity.  Defendants deny the remaining allegations of Paragraph 8.

9.     At all times relevant, Defendants' actions took place in the State of Illinois.

**ANSWER**:     Defendants admit that the Complaint alleges actions by Defendants that took place in Illinois, but deny that their actions violated any law.

10.     Defendants committed the acts and omissions alleged in this complaint in bad faith and with knowledge that their conduct violated established and settled law.

**ANSWER**:     Defendants deny the allegations of Paragraph 10.

**General Factual Allegations**

11.     Plaintiff, Annie Liu, the daughter of first-generation immigrants, grew up poor in a drug and crime-ridden community in southern California.  Plaintiff, along with her older brother, is the first in her family to earn a college degree.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 11.

3

1235557.1

12.     Despite these humble beginnings, Plaintiff was admitted to Harvard University on a full scholarship.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 12.


13.     In the fall of 2002, during her freshman year at Harvard, Plaintiff began experiencing symptoms of endometriosis.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 13.


14.     Endometriosis, an incurable disease of unknown cause, occurs when endometrial tissue, normally found inside the uterus, grows outside a woman's uterus, adhering to surrounding reproductive organs and gastrointestinal parts.  Endometriosis produces cysts, adhesions, and scar tissues that can interfere with organ functions and cause serious internal inflammations.  The primary symptoms of endometriosis are chronic pelvic pain (sometimes severe and often worsening during a woman's menstruation) in the abdomen and pelvis, gastro-intestinal complications, and infertility.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 14.


15.     While a student at Harvard, Plaintiff underwent emergency surgery to excise two large tumors (endometriosis), remove scar tissue, and repair organ damage caused by extensive growths of endometrial implants and adhesions that had bound Plaintiff's pelvic and gastrointestinal organs to each other and to the walls of Plaintiff's pelvis and abdomen. Following surgery, Plaintiff was medically diagnosed with Stage III/IV endometriosis.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 15.

1235557.1

16.     Excision surgery is an effective but temporary treatment.  Plaintiff continues to suffer from debilitating gastrointestinal and rectal pain, diarrhea, intermittent bleeding, and chronic fatigue – consistent with the incurable nature of this disease.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 16.


17.     Plaintiff's impairment substantially limits one or more of her major life activities, including her ability to concentrate, learn, and think.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 17.


18.     At times, Plaintiff's pain is such that she becomes incapacitated, unable to perform functions of daily living, and must be confined to bed.  Plaintiff's impairment likewise interferes with major bodily functions, including her reproductive and digestive systems.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 18.


19.     Despite her disability, Plaintiff was determined not to let it diminish her aspirations.  With appropriate academic accommodations, Plaintiff excelled at Harvard, earning both good grades and accolades for her community service.  Plaintiff worked up to twenty-five hours per week, volunteered extensively, and served as the Director of a non-profit program for at-risk youth in Boston's Chinatown.  Plaintiff was twice awarded scholarships for her outstanding contributions in public service, leadership, and advocacy.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 19.


20.     Plaintiff graduated from Harvard in November 2007 with a cumulative grade point average of 3.39.

**ANSWER**:     Defendants admit that Plaintiff's undergraduate transcript reflects that she

graduated from Harvard in November 2007. Defendants deny the remaining allegations of

Paragraph 20.

1235557.1

21.    After graduation, Plaintiff worked with the Manhattan District Attorney's Office to help spearhead the creation of a criminal intelligence unit alongside an innovative intelligence-driven prosecution model.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 21.

22.    In December 2010, Plaintiff applied for admission to the Law School.

**ANSWER**:    Defendants admit that Plaintiff applied for admission to the Law School to enroll in the fall of 2011. Defendants deny the remaining allegations of Paragraph 22.

23.    In her application, Plaintiff disclosed that she had been diagnosed with a severe form of endometriosis.

**ANSWER**:    Defendants admit that in one of the essays she submitted as part of her Law School application, Plaintiff represented that she had been diagnosed with Stage III/IV endometriosis. Defendants deny the remaining allegations of Paragraph 23.

24.    Plaintiff was admitted to the Law School and enrolled in the fall of 2011.

**ANSWER**:    Defendants admit the allegations of Paragraph 24.

25.    In the spring of 2012, Plaintiff provided documentation of her disability and the resultant functional limitations to the University's office of Services for Students with Disabilities ("SSD").

**ANSWER**:    Defendants admit that in the spring of 2012, Plaintiff provided documentation to the University's office of Services for Students with Disabilities indicating that she had endometriosis, anxiety, and depression.  Defendants lack knowledge or information sufficient to admit or deny that these conditions were "disabilities" and whether Plaintiff

6

1235557.1

experienced functional limitations resulting from those conditions. Defendants deny any

remaining allegations of Paragraph 25.

26.     Plaintiff's supporting documentation included a diagnosis of endometriosis, as
well as major depressive disorder and anxiety, common co-morbid conditions of endometriosis.
Notably, high levels of stress have been found to worsen the symptoms of endometriosis and
cause the disease to progress.

**ANSWER**:     Defendants admit that the documentation Plaintiff provided the

University's SSD office included diagnoses of anxiety, depression, and endometriosis.

Defendants deny that the documentation includes a diagnosis of "major depressive disorder."

Defendants lack knowledge or information sufficient to admit or deny the remaining allegations

of Paragraph 26.

27.     The SSD approved accommodations to facilitate Plaintiff's equal access to the
University's programs and resources.

**ANSWER**:     Defendants admit that SSD approved certain reasonable accommodations

in accordance with applicable disability laws and University policy and deny the remaining

allegations in Paragraph 27.

28.     The SSD-approved accommodations included: alternative-testing conditions
(double time, reduced distraction environment), extended time for in-class written assignments,
note-taking services, and flexibility on attendance and academic deadlines.

**ANSWER**:     Defendants admit the allegations of Paragraph 28.

29.     Plaintiff's endometriosis compelled her to take a medical leave of absence from
the Law School for the spring term of 2012.

**ANSWER**:     Defendants admit that Plaintiff took a medical leave of absence from the

Law School for the spring term of 2012. Defendants deny the remaining allegations of Paragraph

29.

1235557.1

30.     During the summer of 2012, Plaintiff served as a judicial extern on the United States Court of Appeals for the Ninth Circuit.

**ANSWER**:     Defendants admit that Plaintiff represented she served as a judicial extern on the United States Court of Appeals for the Ninth Circuit during the summer of 2012, but lack knowledge or information sufficient to admit or deny the truth of the remaining allegations of Paragraph 30.

31.     She returned to the Law School in the fall of 2012.

**ANSWER**:     Defendants admit that Plaintiff returned to the Law School from medical leave in the fall of 2012.

32.     During the fall term of 2012, Plaintiff served as a judicial extern on the United States Court of Appeals for the Seventh Circuit.

**ANSWER**:     Defendants admit the allegations of Paragraph 32.

33.     During the spring term of 2013, Plaintiff interned for the Financial Industry Regulatory Authority (FINRA), the largest independent securities regulator in the United States.

**ANSWER**:     Defendants admit that, during the spring term of 2013, Plaintiff interned for FINRA but lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 33.

34.     Plaintiff's endometriosis required her to use her SSD-approved accommodations during her second year of law school.

**ANSWER**:     Defendants admit that Plaintiff received multiple accommodations during her second year of law school, including accommodations that had been approved by SSD. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 34.

1235557.1

35.    On April 24, 2013, Plaintiff's Apple computer malfunctioned.  Plaintiff brought her computer into the Genius Bar at an Apple Retail Store.  When the computer continued to malfunction the next day, Plaintiff returned to the Apple Store and was informed that her computer needed a new logic board and would be kept overnight for repairs.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 35.

36.    Coincidentally, during the night of April 25, 2013, Plaintiff experienced sharp pelvic pain and discovered that she had unexpectedly begun vaginal bleeding.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 36.

37.    Plaintiff, worried that she was experiencing the beginning of an endometrial flare, phoned Northwestern Memorial Faculty Foundation ("NMFF") early the next morning to schedule a same-day appointment with Dr. Denise Au ("Dr. Au"), the on-call internal medicine physician.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 37.

38.    Also, in the morning of April 26, 2013, Plaintiff emailed the Dean to inform him of her computer malfunction and to confirm a pre-arranged meeting with him for later that morning.

**ANSWER**:    Defendants admit that, in the morning of April 26, 2013, Plaintiff sent an email to Dean Zimmerman in which she represented that "something went wrong with [her] computer last night, and the folks at the Apple store are holding on to it for repairs" and further admit that Plaintiff has failed to provide Defendants with information sufficient to verify the accuracy of her representations regarding her alleged computer malfunction.  Defendants also admit that, in her April 26, 2013 email, Plaintiff confirmed she would be on campus "just before 12pm" on April 26, 2013 for a pre-arranged meeting. Defendants lack knowledge or information

9

sufficient to admit or deny the allegations that Plaintiff's computer had malfunctioned on April 25, 2013 and deny any remaining allegations in Paragraph 38.

39.     Plaintiff met with the Dean in the morning of April 26th.  She told the Dean about her computer crash and requested a short delay in her exam schedule while her computer, on which her exam and study materials were stored, remained at the Apple Store.

**ANSWER**:     Defendants admit that Plaintiff met with Dean Zimmerman in the morning of April 26, 2013 and represented to him at that meeting that her computer had crashed and requested a delay in her exam schedule due to her computer failure. Defendants deny the remaining allegations of Paragraph 39.

40.     The Dean denied the postponement.

**ANSWER**:     Defendants admit that Dean Zimmerman denied the postponement because, pursuant to Law School practice, a computer failure does not justify modification of a student's exam schedule.  Defendants deny any remaining allegations in Paragraph 40.

41.     Plaintiff accepted the Dean's decision.

**ANSWER**:     Defendants deny the allegations of Paragraph 41.

42.     While meeting with the Dean on the morning of April 26th, Plaintiff did not tell him that she had begun bleeding vaginally.

**ANSWER**:     Defendants admit that Plaintiff did not tell Dean Zimmerman at their meeting on April 26, 2013 that she had begun bleeding vaginally but lack knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff had begun bleeding vaginally on the morning of April 26, 2013. Defendants deny any remaining allegations in Paragraph 42.

1235557.1

43.     Plaintiff did not disclose that she might be experiencing an endometrial flare.

**ANSWER**:     Defendants admit that Plaintiff did not tell Dean Zimmerman at their meeting on April 26, 2013 that she might be experiencing an endometrial flare, that she was ill or felt ill, that she had begun bleeding vaginally, or that she had a doctor's appointment scheduled for later that day. Defendants lack knowledge or information sufficient to admit or deny the allegation that Plaintiff believed she might be experiencing an endometrial flare on the morning of April 26, 2013.

44.     Plaintiff wanted to confirm her condition with her physician before sharing these intimate details with the Dean.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 44.

45.     During the morning meeting, Plaintiff did tell the Dean that she was not feeling well and that she would likely become more ill if she had to study around the clock all weekend.

**ANSWER**:     Defendants admit that during Plaintiff's meeting with Dean Zimmerman on the morning of April 26, 2013, Plaintiff stated that she thought she might become ill if she "had to study around the clock all weekend." Defendants deny that Plaintiff told Dean Zimmerman that she was not feeling well, and deny the remaining allegations of Paragraph 45.

46.     In the afternoon of April 26th, Plaintiff went to her pre-arranged appointment with Dr. Au.

**ANSWER**:     Defendants admit that Plaintiff was seen by Dr. Au on April 26, 2013. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 46.

1235557.1

47.     Based on her medical exam of Plaintiff, Dr. Au diagnosed her with an endometrial flare that also triggered Plaintiff's irritable bowel syndrome.

**ANSWER**:     Defendants admit that, in a letter dated April 26, 2013, Dr. Au wrote that

Plaintiff "has Endometriosis that flares with menses and stress." Defendants lack knowledge or

information sufficient to admit or deny the remaining allegations of Paragraph 47.

48.     Dr. Au wrote a letter detailing Plaintiff's deteriorated health and supporting postponement of Plaintiff's upcoming law school exams.

**ANSWER**:     Defendants admit that, in her letter dated April 26, 2013, Dr. Au stated,

*inter alia*: "[Plaintiff's] medical condition will deteriorate if she has to study around the clock

this weekend for final exams. Please consider this in her request for postponement of final

exams." Defendants deny the remaining allegations of Paragraph 48.

49.     Plaintiff gave Dr. Au's letter to the Dean.

**ANSWER**:     Defendants admit the allegations of Paragraph 49.

50.     The Dean begrudgingly agreed to postpone Plaintiff's Monday exam.  He set a modified exam schedule wherein Plaintiff was required to take her first exam on Friday, May 3, 2013, the last expected day of Plaintiff's menstrual period.

**ANSWER**:     Defendants admit that, on April 26, 2013, Dean Zimmerman agreed to

postpone Plaintiff's exam scheduled for Monday, April 29, 2013, until Friday, May 3.

Defendants lack knowledge or information sufficient to admit or deny the allegation that Friday,

May 3, 2013 was the last expected day of Plaintiff's menstrual period and deny the remaining

allegations of Paragraph 50.

1235557.1

51.     The Dean predicated this deferment on Plaintiff's commitment to complete other work during the time that she would have been studying for her Monday exam.

**ANSWER**:     Defendants admit that Dean Zimmerman agreed to postpone Plaintiff's April 29, 2013 exam provided that Plaintiff committed to complete some of the other outstanding course work in the time period in which she would have been studying for that exam. Defendants deny the remaining allegations of Paragraph 51.

52.     On Monday, April 29, 2013, Plaintiff was still very ill.  She again visited NMFF's medical clinic where she submitted to pelvic examination, this time by Dr. Nancy Dolan ("Dr. Dolan"), the internal medicine physician on-call that day.

**ANSWER**:     Defendants admit that Plaintiff was seen by Dr. Nancy Dolan on April 29, 2013 but lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 52.

53.     Dr. Dolan concluded that Plaintiff was still suffering from her endometriosis flare and irritable bowel syndrome, which were causing Plaintiff severe abdominal and pelvic pain, nausea, vomiting, diarrhea, and fatigue.

**ANSWER**:     Defendants admit that, in a letter dated April 29, 2013, Dr. Dolan stated that Plaintiff was "currently experiencing a flare of her endometriosis and irritable bowel syndrome" and that Plaintiff's "current symptoms include abdominal pain, N/V, diarrhea, fatigue." Defendants deny the remaining allegations of Paragraph 53.

54.     In a letter dated April 29, 2013, Dr. Dolan opined that Plaintiff's debilitating condition warranted a postponement of her exams until after her symptoms had resolved.

**ANSWER**:     Defendants admit that in her April 29, 2013 letter, Dr. Dolan stated that she believed Plaintiff's condition warranted a postponement of her exams until after symptoms resolved, specifically until Friday, May 3, 2013. Defendants deny the remaining allegations of Paragraph 54.

13

55.     The next day, notwithstanding the medical diagnosis of the two NMFF physicians, the Dean sent an email to Plaintiff, carbon-copied to several other staff members, accusing Plaintiff of trying to deceive and manipulate him and the University by falsifying her illness to procure a postponement of exams.  (See Dean's April 30th email, Exhibit A.)

**ANSWER**:     Defendants admit that, on April 30, 2013, Dean Zimmerman sent Plaintiff

the email attached as Exhibit A to the Complaint with copies to other Law School employees

who work directly for or with Dean Zimmerman and whom Dean Zimmerman believed Plaintiff

had contacted or attempted to contact for the purpose of seeking to modify decisions that Dean

Zimmerman had made based upon the documentation that Plaintiff had provided from her

medical providers. Defendants deny the remaining allegations in Paragraph 55.

56.     The Dean premised his accusation on Plaintiff's failure to tell him during their meeting on the morning of April 26th that Plaintiff had started her menses and was anticipating an endometrial flare.

**ANSWER**:     Defendants deny the allegations of Paragraph 56.

57.     In his April 30, 2013 email, the Dean also expressly forbade Plaintiff from requesting further extensions on any currently scheduled exams or assignments.

**ANSWER**:     Defendants admit that, in light of the documentation that Plaintiff had

provided from her medical providers, Dean Zimmerman stated in his April 30, 2013, *inter alia*,

"you must not ask for any more extensions on your currently scheduled exams or assignments."

Defendants deny any remaining allegations of Paragraph 57.

1235557.1

58.     Plaintiff responded, explaining to the Dean that she had not alerted him to her menstrual bleeding because "[i]t is extremely uncomfortable for me to share private, personal, and intimate information about my menstruation cycle with people outside my family.  And it is especially difficult to keep sharing this information with someone who appears to believe that the pain I'm experiencing as a result of a documented, physical medical condition are made up to cover a computer failure."

**ANSWER**:     Defendants admit that Plaintiff responded to Dean Zimmerman's April 30, 2013, email in an email dated May 1, 2013, and that Plaintiff's May 1, 2013, email contained the quoted language that appears in Paragraph 58. Defendants lack knowledge or information sufficient to admit or deny the allegations that Plaintiff had not alerted Dean Zimmerman to her menstrual bleeding for the reason stated in her email and deny any remaining allegations of Paragraph 58.

59.     On Wednesday, May 1, 2013, the Dean spoke with Dr. Dolan ostensibly to divine her expert opinion about Plaintiff's current medical condition.

**ANSWER**:     Defendants admit that, on or about May 1, 2013, Dean Zimmerman spoke with Dr. Dolan regarding Plaintiff's medical condition. Defendants deny the remaining allegations of Paragraph 59.

60.     Instead, in his conversation with Dr. Dolan, the Dean attempted to persuade Dr. Dolan that Plaintiff was contriving her illness.

**ANSWER**:     Defendants deny the allegations of Paragraph 60.

61.     The Dean advised Dr. Dolan that (1) Plaintiff had requested an extension because her computer had crashed and that, when he denied her request, she had threatened to make herself ill; (2) Plaintiff did not disclose that she was suffering from symptoms of endometriosis when she met with him on the morning of April 26th; and (3) Plaintiff had sought counseling with the University's Office of Counseling and Psychological Services (the "Counseling Office").

**ANSWER**:     Defendants admit that Dean Zimmerman spoke with Dr. Dolan for the purpose of verifying the statements in her April 29, 2013 letter regarding Plaintiff's medical

15

condition and restrictions, and clarifying Dr. Dolan's basis for those statements. Defendants deny the remaining allegations of Paragraph 61.

62.     On May 2, 2013, the Dean sent an email (the "May 2nd email") to twenty-three (23) faculty and administrative staff members from the Law School and the University, including without limitation, six (6) deans of the Law School, a number of Plaintiff's law professors, the Associate Director and staff psychologists of the University's Counseling Office, the Assistant Director of the University's SSD Office, the Associate Director and staff of the Career Strategy Center, the Director and staff of Student Services, the Director and staff of Records and Registration and the directors of various academic programs.  (See Dean's May 2nd email, Exhibit B.)

**ANSWER**:     Defendants admit that, on May 2, 2013, Dean Zimmerman sent the email attached to the Complaint as Exhibit B to the twenty-three faculty and administrative staff members from the Law School and the University identified as recipients, including one of Plaintiff's professors; the Associate Director and a staff psychologist of the University's Counseling Office; the Assistant Director of the University's SSD Office; the Director and two staff members of the Law School's Career Strategy Center; the Director and staff members of the Law School's Student Services Office; the Associate Dean and staff of the Law School's Records and Registration Office; the Director of the Law School's International Program;  the Associate Dean of Academic Excellence; and the Dean of the Law School and two members of his staff. Defendants deny the remaining allegations of Paragraph 62.

63.     Many of the recipients of the May 2nd email were unknown to Plaintiff.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 63.

1235557.1

64.     In the May 2nd email that he sent to twenty-three faculty and administrators of the Law School and University, the Dean branded Plaintiff as "uncooperative, evasive and not forthcoming in her representations to the law school and University personnel."

**ANSWER**:     Defendants admit that, in his May 2, 2013 email, Dean Zimmerman stated his opinion based upon the information that he had in his possession that Plaintiff had been "uncooperative, evasive, and not forthcoming in her representations to the law school and University personnel." Defendants deny the remaining allegations of Paragraph 64.

65.     The May 2nd email further stated that although the Dean had given Plaintiff an exam schedule, "she has been actively looking for anyone who will give her a different answer."

**ANSWER**:     Defendants admit the allegations of Paragraph 65.

66.     The Dean instructed all recipients, that if Plaintiff approached them, they should direct her to the Dean or to Rob Durr (from the University's Counseling Office).

**ANSWER**:     Defendants admit the allegations of Paragraph 66.

67.     The Dean added that if Plaintiff were to say she is experiencing a medical emergency, they should "tell her to call 911 or go to the emergency room."

**ANSWER**:     Defendants admit the allegations of Paragraph 67.

1235557.1

68. Plaintiff did not learn of the May 2nd email blast until sometime in August of 2013.

**ANSWER**: Defendants deny that the May 2, 2013 email referenced in this paragraph was an "email blast" and lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 68.

69. Later in the day on May 2, 2013, Plaintiff, still experiencing acute symptoms of her endometriosis, again visited Dr. Dolan. After conducting still another thorough pelvic exam, Dr. Dolan found that Plaintiff's condition had not improved. She drafted another letter recommending that, given Plaintiff's symptoms and the effects of her treatment, Plaintiff be excused from her Friday, May 3rd exam if she were not feeling better the next day.

**ANSWER**: Defendants admit that, in a letter dated May 2, 2013, Dr. Dolan stated that she had seen Plaintiff again that day "for nausea, vomiting, abdominal pain and cramping," and that "these symptoms [were] consistent with her previous IBS/endometrial flares." Defendants also admit that, in that letter, Dr. Dolan stated: "Given [Plaintiff's] symptoms and the effects of [her] treatment, if she is not feeling any better tomorrow, I recommend considering postponement of the exam." Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 69.

70. The Dean received this letter and again spoke with Dr. Dolan.

**ANSWER**: Defendants admit the allegations of Paragraph 70.

1235557.1

71.     The Dean rejected Dr. Dolan's recommendation that Plaintiff's condition be reassessed the following day.  Instead, the Dean warned Plaintiff: "If you do not take the exam tomorrow as currently scheduled, you will receive and F in the course.  And the same is true for all other work."

**ANSWER**:     Defendants deny that Dean Zimmerman "rejected Dr. Dolan's recommendation." Defendants admit that Dean Zimmerman followed Dr. Dolan's recommendation set forth in her May 2, 2013 letter and admit the remaining allegations of Paragraph 71.

72.     On May 3, 2013, at 9:00 a.m., Plaintiff took her Constitutional Law exam, as directed.

**ANSWER**:     Defendants admit the allegations of Paragraph 72.

73.     Over the course of six (6) hours, Plaintiff struggled to complete her exam while rushing to and from the restroom with repeated bouts of severe vomiting and diarrhea.  She also labored to work through the overwhelming sedating effects of multiple prescription medications.

**ANSWER**:     Defendants admit that Plaintiff had six hours to complete her Constitutional Law exam. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 73.

1235557.1

74.     Plaintiff ultimately received a grade of C+ on her Constitutional Law exam, the lowest grade she had ever received on any final exam at any school during her education.

**ANSWER**:     Defendants admit that Plaintiff received a grade of C+ in her Constitutional Law course. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 74.

75.     Early in May of 2013, the Dean and/or another Law School representative contacted Dr. Flavio Arana ("Dr. Arana") at Meridian Psychiatric Partners, LLC ("Meridian Psychiatric Partners").  Meridian Psychiatric Partners is the private psychiatric practice where Plaintiff had sought treatment for depression and anxiety.

**ANSWER**:     Defendants deny that Dean Zimmerman contacted Dr. Arana or any other provider at Meridian Psychiatric Partners.  Defendants admit that, in late April of 2013, Rob Durr, Ph.D., a Northwestern staff psychologist, contacted Meridian Psychiatric Partners, which is a private psychiatric practice where Plaintiff had been in treatment, with Plaintiff's consent. Defendants lack knowledge or information sufficient to admit or deny the allegations regarding whether Plaintiff sought treatment from Meridian Psychiatric Partners for depression and anxiety and deny the remaining allegations of Paragraph 75.

76.     The Dean and/or another Law School representative informed Dr. Arana (who was filling in for Plaintiff's long-standing psychiatrist, Dr. Elise Rehn ("Dr. Rehn") during Dr. Rehn's maternity leave) that Plaintiff was not completing work; that Plaintiff was attributing her failure to finish work to her depression; and that Plaintiff had had an emergency appointment with the University's Counseling Office.

1235557.1

**ANSWER**:     Defendants deny the allegations of Paragraph 76.


77.     Plaintiff had not signed a release permitting anyone from the Law School to speak with her private psychiatrist during this time frame.  Plaintiff had not authorized this conversation.

**ANSWER**:     Defendants deny the allegations of Paragraph 77.


78.     On May 13, 2013, the Dean sent Plaintiff an email demanding that she meet with him and other individuals and that Plaintiff bring to this meeting "all the documents you have related to your hospitalizations during the Spring 2013 semester (documents can include bills, medical reports, etc.)."  The Dean also demanded that Plaintiff bring "all documents related to your computer failure during the Spring 2013 semester (same thing, bills, invoices, etc.)."

**ANSWER**:     Defendants admit that, on May 13, 2013, Dean Zimmerman sent Plaintiff an email informing her that they "need[ed] to meet and talk between the time you finish your exam on [May] 20th and when you leave town" and instructed her to bring to that meeting "all the documents you have related to your hospitalizations during the Spring 2013 semester (documents can include bills, medical reports, etc.)," and "all documents related to your computer failure during the Spring 2013 semester (same thing, bills, invoices, etc.)." Defendants admit that Dean Zimmerman informed Plaintiff that an individual from Student Services would join the meeting and that Plaintiff had failed to provide information sufficient to verify the accuracy of her representations regarding her alleged overnight hospitalizations in March 2013 or her alleged computer failure during the spring 2013 semester. Defendants deny the remaining allegations of Paragraph 78.

21

79.     The Dean's reference to "hospitalizations during the Spring 2013 semester" denoted a period two months prior in early March of 2013 during which Plaintiff had experienced medical complications caused by her endometriosis and had sought medical treatment at Northwestern Memorial Hospital Emergency Department.

**ANSWER**:     Defendants admit (a) that the reference to Plaintiff's "hospitalizations during the Spring 2013 semester" in Dean Zimmerman's May 13, 2013 email was a reference to two periods in March 2013 during which Plaintiff had claimed to have been unable to complete course work that was due that month because she was hospitalized overnight at Northwestern Memorial Hospital and (b) that Plaintiff has failed to provide information sufficient to verify the accuracy of her alleged overnight hospitalizations in March 2013. Defendants lack knowledge or information sufficient to admit or deny the allegations that Plaintiff in fact experienced medical complications caused by her endometriosis and sought medical treatment at the Northwestern Memorial Hospital Emergency Department in March 2013 and deny any remaining allegations of Paragraph 79.


80.     While undergoing medical treatment in March of 2013, Plaintiff had requested a short extension on a paper from Professor James McMasters.  Following Law School protocol, Plaintiff had promptly notified Professor McMasters about her medical condition.  Professor McMasters had granted Plaintiff a brief extension.

**ANSWER**:     Defendants admit that, in March 2013, Plaintiff requested multiple extensions on a paper for Professor James McMasters and that Professor McMasters granted Plaintiff's extension requests.  Defendants also admit that, at that time, Plaintiff provided

22

McMasters some information about her medical condition. Defendants deny the remaining allegations of Paragraph 80.

81.     When Plaintiff requested an extension on her paper in March of 2013, Professor McMasters had consulted with the Dean about Plaintiff's request.  At that time, the Dean had not opposed the extension or required medical documentation or access to Plaintiff's treating physicians.

**ANSWER**:    Defendants admit that Professor McMasters consulted with Dean Zimmerman regarding certain of Plaintiff's multiple requests for an extension of her paper in March 2013 and that Dean Zimmerman did not oppose and was supportive of Plaintiff receiving her SSD-approved accommodation of flexibility on this assignment. Defendants deny the remaining allegations of Paragraph 81.

82.     In response to the Dean's May 13th request to meet and to produce extensive documentation related to her health (and computer failure), Plaintiff respectfully asked the Dean to provide some context as to the purpose of the meeting and how the requested documents would be involved.

**ANSWER**:    Defendants deny that Dean Zimmerman's May 13, 2013 request included a request to produce extensive documentation related to her health or her alleged computer failure.  Defendants admit that Dean Zimmerman requested documentation sufficient to verify the representations that Plaintiff had made regarding her alleged overnight hospitalizations and computer failure during March 2013, that Plaintiff asked Dean Zimmerman to provide some context as to the purpose of the meeting and how the requested documents would be used, that

23

1235557.1

Dean Zimmerman provided Plaintiff with the information she requested, and that Plaintiff nonetheless has failed to provide the information that Dean Zimmerman requested or other information that would verify the representations that Plaintiff has made regarding her alleged overnight hospitalizations and computer failure. Defendants deny any remaining allegations of Paragraph 82.

83. The Dean replied to Plaintiff's request with a single-sentence email: "That is the context for our discussion."

**ANSWER**: Defendants admit the allegations of Paragraph 83.

84. On May 16, 2013, the Dean again contacted NMFF to discuss Plaintiff's medical diagnosis and symptoms (although by that time, Plaintiff no longer had any pending requests for postponement of exams or papers).

**ANSWER**: Defendants admit that, as of May 16, 2013, Plaintiff had not made additional requests for postponement of exams or papers. Defendants deny the remaining allegations of Paragraph 84.

85. In the meantime, Plaintiff completed another exam and three final papers for four of her classes. The Dean had given Plaintiff a deadline of May 20, 2013 at 5:00 p.m. for submitting those papers.

**ANSWER**: Defendants admit that Dean Zimmerman gave Plaintiff a deadline of May 20, 2013 at 5:00 pm for completing her outstanding coursework for the 2012-2013 academic year, which included the submissions of two final papers and one final take-home exam, two of

24

which were initially due in December 2012 and one of which was initially due in March 2013, and that Plaintiff completed one of her outstanding exams on May 7, 2013. Defendants deny that Plaintiff met the May 20, 2013 deadline to submit her three final assignments and deny the remaining allegations of Paragraph 85.


86.     Plaintiff emailed all her professors at approximately 4:30 p.m. on May 20th to notify them that, although she had completed her papers, she was unavoidably detained, and would not be able to access her computer (on which her exams were saved) to send them until slightly after 5:00 p.m. that day.

**ANSWER**:     Defendants admit that Plaintiff emailed two of her professors (Professors Presser and McMasters) at approximately 4:30 pm on May 20, 2013, the date on which her outstanding assignments that were initially due in December 2012 and March 2013 were due pursuant to an agreement that Plaintiff had reached, to inform them she was stuck in traffic after picking up a friend from the airport and there was "[n]o way [she was] going to get back to [her] apartment in time to send [them her] paper[s] by 5pm," but that the paper[s] were "finished." Defendants deny any remaining allegations of Paragraph 86.


87.     Plaintiff proposed to her professors that she email her papers to them as soon as she returned home and regained access to her computer.  In keeping with standard Law School practices and procedures, Plaintiff volunteered to provide evidence, including systems-generated timestamps that would conclusively demonstrate that her papers had not been modified after the deadline.

1235557.1

**ANSWER**:    Defendants admit that, in her emails to Professors Presser and McMasters on May 20, 2013, Plaintiff stated that she would send her assignments when she returned home and would "include timestamp to prove document has not been opened, modified, or otherwise tampered with at any point beyond the 5pm deadline." Defendants deny that the evidence Plaintiff volunteered to provide would "conclusively demonstrate that her papers had not been modified after the deadline" and deny that Plaintiff has provided information sufficient to verify the representations she has made regarding whether or when she completed the assignments that were due on May 20, 2013.  Defendants deny any remaining allegations of Paragraph 87.

88.    Plaintiff's professors willingly agreed.  However, shortly thereafter, they directed Plaintiff to refrain from sending her completed papers.  On information and belief, Plaintiff's professors were instructed by the Dean to refuse her papers.

**ANSWER**:    Defendants deny that Professors Presser and McMasters "willingly agreed" to Plaintiff's proposal identified in Paragraph 87. Defendants admit that Professors Presser and McMasters consulted with Dean Zimmerman regarding Plaintiff's May 20, 2013 emails and thereafter directed Plaintiff to refrain from sending them her assignments after the 5:00 deadline had passed because Plaintiff had failed to meet the extended May 20, 2013 deadline to submit her assignments that were initially due in December 2012 and March 2013. Defendants deny the remaining allegations of Paragraph 88.

89.     Late that same night, the Dean emailed Plaintiff and directed her to submit her papers directly to him by 5:00 p.m. the next day.

**ANSWER**:     Defendants admit that Dean Zimmerman emailed Plaintiff on the night of May 20, 2013 and directed her to bring her computer to Student Services the next day so that he could attempt to verify the representations that Plaintiff had made regarding whether and when she completed the assignments that were due on May 20, 2013.  Defendants deny that Plaintiff has provided information sufficient to verify the representations that Plaintiff has made regarding her alleged inability to meet the May 20, 2013 deadline.  Defendants deny any remaining allegations of Paragraph 89.


90.     Early the next morning, on May 21, 2013, Plaintiff flew to New York to report for a mandatory training session and security clearance at the U.S. Attorney's Office ("USAO") where Plaintiff had secured a position as a legal intern for the summer.

**ANSWER**:     Defendants admit that Plaintiff failed to appear for the meeting referenced in Defendants' Answer to Paragraph 89 and that she has failed to provide information sufficient to verify the representations she has made regarding her alleged inability to submit her outstanding assignments by the May 20, 2013 deadline.  Defendants also admit that Plaintiff has represented that she had secured a position as a legal intern at the U.S. Attorney's Office in New York for the summer of 2013 but lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 90.

1235557.1

91.     By the time Plaintiff read the Dean's email from the night of May 20, 2013, his "next day" deadline had lapsed.

**ANSWER**:     Defendants admit that Plaintiff failed to appear for the meeting referenced in Defendants' Answer to Paragraph 89 and that she has failed to provide information sufficient to verify the representations she has made regarding her alleged inability to submit her outstanding assignments by the May 20, 2013 or attend the meeting with Dean Zimmerman on May 21, 2013, but lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 91.

92.     The Dean sent a follow-up email on May 23, 2013, declaring that he was giving Plaintiff "F" grades in all three courses.  The Dean subsequently entered "F" grades for Plaintiff in all three of her courses.

**ANSWER**:     Defendants admit that Dean Zimmerman sent Plaintiff an email on or about May 23, 2013, regarding the entry of "F" grades in three courses due to her failure to submit her outstanding assignments for those courses by the May 20, 2013 deadline. Defendants deny the remaining allegations of Paragraph 92.

93.     The Dean stated that the "F" grades would remain on Plaintiff's transcript until she had submitted her computer for forensic examination by the Northwestern IT department.

**ANSWER**:     Defendants admit that Plaintiff has failed to provide information sufficient to verify the representations that she has made regarding her alleged inability to submit her outstanding assignments by the May 20, 2013 deadline and deny the remaining allegations of Paragraph 93.

1235557.1

94.     Immediately upon receipt of the Dean's email, Plaintiff offered to make her computer available for forensic examination by the University to confirm that she had not altered her papers after the deadline.

**ANSWER**:     Defendants deny that Plaintiff has provided information sufficient to verify the representations that she has made regarding her alleged inability to submit her outstanding assignments by the May 20, 2013 deadline and deny the remaining allegations of Paragraph 94.

95.     At this point, the Dean deviated from his original terms and conditions and refused to permit a forensic examination of Plaintiff's computer until she had provided him with all documents relating to her hospitalization back in March of 2013.

**ANSWER**:     Defendants deny that Plaintiff has provided information sufficient to verify the representations she has made regarding her alleged overnight hospitalizations in March of 2013 and deny the remaining allegations of Paragraph 95.

96.     The Dean reiterated that Plaintiff's transcript would reflect "F" grades for all three courses and that none of her professors would be permitted to grade her papers unless Plaintiff produced the sought-after medical records.

**ANSWER**:     Defendants deny that Plaintiff has provided information sufficient to verify the representations she has made regarding her alleged overnight hospitalizations in March of 2013 and deny the remaining allegations of Paragraph 96.

1235557.1

97.     The Dean also imposed an indefinite "enrollment hold" on Plaintiff's registration at the Law School.  This hold prevented Plaintiff from enrolling in courses.  The Dean further effectively prevented Plaintiff from engaging in other academic activities, including the annual writing competition for law journal membership.

**ANSWER**:     Defendants admit that Dean Zimmerman placed an enrollment hold on Plaintiff's registration at the Law School, which prevented Plaintiff from enrolling in courses for the fall 2013 term, because Plaintiff had not provided information sufficient to verify the representations she had made regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failure, or her alleged inability to submit her outstanding assignments by the May 20, 2013 deadline. Defendants deny that this enrollment hold was "indefinite" because Defendants have always been willing to lift the enrollment hold upon receipt of information sufficient to verify Plaintiff's representations described in their Answer to this Paragraph and deny the remaining allegations of Paragraph 97.

98.     Plaintiff, through an attorney, tried to resolve the conflict.  Counsel for the University responded that Plaintiff's only recourse was to meet with the Dean and provide him with the materials he had demanded.

**ANSWER**:     Defendants admit that Plaintiff retained an attorney but deny the remaining allegations of Paragraph 98.

30

99.     On May 30, 2013, Plaintiff was awarded a scholarship (bestowed upon only 3 of approximately 140 summer legal interns) from the USAO.  Because Law School rules preclude students from simultaneously received scholarship funding and course credit for the same internship, Plaintiff promptly notified her professor that she would need to withdraw from her Summer Public Interest Practicum course.  Her professor permitted Plaintiff to withdraw without incurring any marks or notations on her transcript.

**ANSWER**:     Defendants admit that Plaintiff notified her professor that she wanted to withdraw from her Summer Public Interest Practicum course because she had received a fellowship from the USAO and because she was concerned that due to a delay in getting her security clearance, she might not have time to fulfill the hours requirement of the Practicum course. Defendants admit that Plaintiff's professor was willing to allow her to withdraw from the Practicum without incurring any marks on her transcript subject to the approval of the Registrar's Office, and that Plaintiff's transcript does not include any "marks" or other notations reflecting her withdrawal from the Practicum course.  Defendants deny the remaining allegations of Paragraph 99.


100.    On June 14, 2013, the Dean informed Plaintiff that he had added a "W" grade to her transcript because she had withdrawn from the Summer Public Interest Practicum course. This decision deviated from standard Law School practice.

**ANSWER**:     Defendants admit that, in an email dated June 14, 2013 from Barbara Reiffman, Plaintiff was informed that a "W" grade had been placed on her transcript for the Summer Public Interest Practicum course pursuant to the Law School's standard policy and practice regarding course withdrawals because Plaintiff had withdrawn from the Practicum

31

course. Defendants deny that this decision deviated from standard Law School practice and deny the remaining allegations of Paragraph 100.

101.    A "W" on a transcript denotes that a student has withdrawn from a course after the "drop" deadline.  Most often this occurs when a student is failing the course.

**ANSWER**:    Defendants admit the first sentence of Paragraph 101 and deny the remaining allegations of Paragraph 101.

102.    The Dean later informed Plaintiff that he had imposed the "W" grade on her transcript in order to pressure her into meeting and producing her medical records.

**ANSWER**:    Defendants admit that Plaintiff has failed to provide information sufficient to verify the representations she has made regarding her alleged overnight hospitalizations in March of 2013 and deny the remaining allegations of Paragraph 102.

103.    Feeling that she was being coerced by the Dean's interference with her transcript into providing him with private medical records pertaining to her gynecological health, Plaintiff sought the support and advice of others at the University and Law School.

**ANSWER**:    Defendants admit that Plaintiff contacted other faculty and staff members of the University and Law School but lack knowledge or information sufficient to admit or deny the allegations regarding Plaintiff's feelings. Defendants deny that they attempted to coerce Plaintiff, deny that Plaintiff provided information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013, deny that they sought private

32

medical records pertaining to Plaintiff's gynecological health, and deny the remaining allegations of Paragraph 103.

104.     In June of 2013, desperate for help, Plaintiff attempted to engage the foremost Dean of the Law School, Daniel Rodriguez, in her dispute with the Dean.  Because Dean Rodriguez was traveling abroad, she implored his administrative assistant to ask him to contact her.

**ANSWER**:     Defendants admit that, in June 2013, Plaintiff contacted the office of the Dean of the Law School, Daniel Rodriguez. Defendants admit that Dean Rodriguez was travelling abroad at that time and that Plaintiff spoke to Dean Rodriguez's assistant. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 104.

105.     Before responding to Plaintiff, Dean Rodriguez spoke to Dean Zimmerman. Dean Rodriguez then sent Plaintiff an email from Europe, advising her, "it would not be appropriate" for him to discuss this matter with her because Dean Zimmerman "is the correct venue for the concerns that you have."  He instructed her to "act quickly and cooperatively in meeting with Dean Zimmerman."

**ANSWER**:     Defendants admit the allegations of Paragraph 105.

106.     Plaintiff then sought assistance from the larger University community, including SSD staff members, Tim Montgomery and Margie Roe.  Ms. Roe and Mr. Montgomery brought the issue to the attention of Todd Adams, Dean of Students at the University, specifically advising him that the stress of Plaintiff's conflict with the Dean was taking a physical toll on Plaintiff.

**ANSWER**:     Defendants admit that in the summer of 2013, Plaintiff contacted Tim Montgomery, Assistant Director for Services with Students with Disabilities and Margaret Roe, who was then the Director of Services for the Office of Student Services. Defendants deny the remaining allegations of Paragraph 106.

107.     Dean Adams declined to communicate with Plaintiff and failed to provide her with any guidance or to intervene to affect a resolution.

**ANSWER**:     Defendants admit that Dean Adams informed Plaintiff that she should communicate directly with Dean Zimmerman and the Law School regarding her request to take a leave of absence from the Law School, which request was granted by Dean Zimmerman. Defendants deny the remaining allegations of Paragraph 107.

108.     Subsequently, the Dean (Zimmerman) sent Plaintiff an email advising her to stop seeking counsel from others in the University.

**ANSWER**:     Defendants deny the allegations of Paragraph 108.

34

1235557.1

109.     Dean Rodriguez, characterizing Plaintiff's dispute with the Dean an "internal Law School issue," directed her to refrain from including Dean Adams on any correspondence "as this does not help at all in moving this process forward."

**ANSWER**:     Defendants admit that Dean Rodriguez informed Plaintiff that her request to take a leave of absence from the Law School was an internal Law School issue and suggested that Plaintiff refrain from copying Dean Adams on her correspondence with members of the Law School staff. Defendants also admit that the Law School and Dean Zimmerman granted her request for a leave of absence and deny the remaining allegations of Paragraph 109.

110.     Plaintiff was thwarted in her attempts to informally resolve this dispute.

**ANSWER**:     Defendants deny the allegations of Paragraph 110.

111.     During June and July of 2013, Plaintiff was offered numerous opportunities to interview with various law firms for summer associate positions.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 111.

112.     However, the "F" and "W" grades on Plaintiff's transcript rendered it impossible for her to move forward in the interview process.

**ANSWER**:     Defendants deny the allegations of Paragraph 112.

1235557.1

113.     Under extreme pressure and in an effort to mitigate the damage inflicted by the Dean, Plaintiff agreed to meet with the Dean and produce the requested medical and computer records for inspection.

**ANSWER**:     Defendant admits that Plaintiff agreed to meet with Dean Zimmerman and that she provided certain medical records and computer records.  Defendants deny that those records were sufficient to verify the representations Plaintiff had made regarding her alleged overnight hospitalizations and alleged computer failures during the spring of 2013 and denies the remaining allegations of Paragraph 113.

114.     Trying to clarify the breadth of the Dean's request, Plaintiff wrote to him that she intended to bring to the meeting "copies of my medical records from spring 2013, which will include information pertaining to my colonoscopy, endoscopy, sigmoidoscopy, biopsy, ultrasounds and other procedures involving the examination of my small intestine, large intestine, rectum, stomach, uterus, ovaries, fallopian tubes and other parts of the interior cavity of my body."

**ANSWER**:     Defendants admit that Plaintiff sent Dean Zimmerman an email on July 12, 2013, which included the language referenced in Paragraph 114, but lack knowledge or information sufficient to admit or deny the allegations regarding Plaintiff's intentions in sending this email. Defendants deny that they requested the information referenced in Paragraph 114, deny that Plaintiff has provided information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013, and deny any remaining allegations of Paragraph 114.

36

115.     The Dean replied: "See you Monday at 2:00 pm."

**ANSWER**:     Defendants admit that Dean Zimmerman replied to Plaintiff's email on

July 12, 2013, and that his email included, *inter alia*, the language quoted in Paragraph 115.


116.     Plaintiff took several days off from her internship with the USAO to fly back to

Chicago to meet with the Dean on July 15th and 16th of 2013 ("July Meetings").

**ANSWER**:     Defendants admit that Plaintiff met with Dean Zimmerman in Chicago on

July 15 and July 16, 2013 but lack knowledge or information sufficient to admit or deny the

remaining allegations of Paragraph 116.


117.     Wary and anxious about meeting alone with the Dean, Plaintiff requested to have

legal counsel accompany her during the meetings.

**ANSWER**:     Defendants admit that Plaintiff stated in an email dated July 11, 2013 that

she "intended to bring [her] lawyer with [her]" to the July Meetings. Defendants lack knowledge

or information sufficient to admit or deny the allegations that Plaintiff was "[w]ary and anxious

about meeting alone with the Dean." Defendants deny any remaining allegations of Paragraph

117.


118.     The Dean denied her request.

**ANSWER**:     Defendants admit that Dean Zimmerman informed Plaintiff that, in

accordance with the Law School's standard practice, an attorney would not be permitted to

attend the July Meetings.

1235557.1

119.    Plaintiff requested that she be allowed to have a representative from the University's SSD office with her during the meetings.

**ANSWER**:    Defendants admit that in her July 12, 2013 email, Plaintiff asserted that an unidentified "associate of Northwestern University may join us for the [July Meetings] as well." Defendants deny the remaining allegations of Paragraph 119.

120.    The Dean denied her request.

**ANSWER**:    Defendants deny the allegations of Paragraph 120.

121.    Given that she was being compelled to attend the meeting alone, Plaintiff asked to record the meetings.

**ANSWER**:    Defendants admit that, in a July 12, 2013 email to Dean Zimmerman, Dean Rodriguez, Dean Adams, Professor Stratton, and Northwestern's in-house counsel, and carbon copied to her attorneys, Plaintiff stated that she intended to record the July Meetings. Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 121 concerning Plaintiff's intentions for making this statement. Defendants deny the remaining allegations of Paragraph 121.

122.    The Dean denied her request.

**ANSWER**:    Defendants admit that Dean Zimmerman informed Plaintiff that, in accordance with the Law School's standard practice, she could not record the July Meetings. Defendants deny the remaining allegations of Paragraph 122.

1235557.1

123.    Plaintiff's meetings with the Dean (and Professor Maureen Stratton, whom the Dean had invited) lasted over six (6) hours and stretched over two (2) days.

**ANSWER**:    Defendants admit that Dean Zimmerman invited Professor Stratton to the July Meetings, which took place over two days. Defendants deny the remaining allegations of Paragraph 123.

124.    Plaintiff was subjected to the intense interrogation by the Dean during the July Meetings.

**ANSWER**:    Defendants admit that they sought to obtain information sufficient to verify the representations that Plaintiff had made regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failures in March and April of 2013, and her alleged inability to submit her outstanding papers by the May 20, 2013 deadline and that Plaintiff failed to provide such information during the July Meetings.  Defendants deny the remaining allegations of Paragraph 124.

125.    During the July Meetings, the Dean demanded confidential and irrelevant information from Plaintiff.  For example, the Dean asked Plaintiff whether she had ever been diagnosed with depression.

**ANSWER**:    Defendants incorporate their Answer to Paragraph 124 and deny the remaining allegations of Paragraph 125.

1235557.1

126.    The Dean demanded that Plaintiff explain why she had missed appointments with her psychiatrist at Meridian Psychiatric Partners (an assertion that was not true), thereby intimating that he was somehow privy to unreported information about her mental health treatment.

**ANSWER**:    Defendants deny the allegations of Paragraph 126.

127.    In the course of the July Meetings, the Dean showed Plaintiff a document from the University's SSD office that contained confidential disability information, protected by the Family Educational Rights and Privacy Act, about one of Plaintiff's classmates.

**ANSWER**:    Defendants admit that in the course of the July Meetings, Dean Zimmerman showed Plaintiff a document from the University's SSD office that concerned Plaintiff and also contained information regarding another student. Defendants further state that any disclosure to Plaintiff regarding another student was inadvertent and Dean Zimmerman immediately retrieved the document from Plaintiff upon realizing it contained information regarding another student. Defendants deny any remaining allegations of Paragraph 127.

128.    The Dean informed Plaintiff that he was a contributing member of a group email list, comprised of deans from all the "top law schools," and insinuated that he had the ability to prevent Plaintiff from being accepted at another law school, were she to try to transfer.

**ANSWER**:    Defendants deny the allegations of Paragraph 128.

1235557.1

129.    During the July Meetings, and in response to the Dean's requirement that she provide "all documents relating to [her] hospitalization in the spring of 2013," Plaintiff showed the Dean seventeen (17) pages of medical records, including detailed reports and images from her gynecological and gastrointestinal examinations in early March of 2013.

**ANSWER**:    Defendants admit that, during the July Meetings, Plaintiff showed Dean Zimmerman several pages of documents that she claimed to be her medical records, including test results and color pictures relating to her gynecological and gastrointestinal examinations in early March of 2013.  Defendants deny that Dean Zimmerman required or asked Plaintiff to provide these documents, deny that the documents Plaintiff provided were sufficient to verify the representations she had made regarding her alleged overnight hospitalizations in March of 2013, and deny any remaining allegations of Paragraph 129.


130.    The Dean and Professor Stratton reviewed these records in Plaintiff's presence. The Dean declared that the records were not to his satisfaction.

**ANSWER**:    Defendants admit that Dean Zimmerman and Professor Stratton refused to review the first medical records Plaintiff provided during the July Meetings, which consisted of test results and color pictures relating to Plaintiff's examinations presumably in March 2013, and that Dean Zimmerman informed Plaintiff that these documents were not responsive to his request or sufficient to verify the representations Plaintiff had made regarding her alleged overnight hospitalizations in March 2013. Defendants deny the remaining allegations of Paragraph 130.

1235557.1

131.    Nonetheless, the Dean insisted upon keeping Plaintiff's medical records for further inspection.

**ANSWER**:    Defendants admit that Dean Zimmerman has retained and kept confidential certain medical records provided by Plaintiff, but deny that these records were responsive to his request or sufficient to verify the representations Plaintiff had made regarding her alleged overnight hospitalizations in March 2013. Defendants deny the remaining allegations of Paragraph 131.

132.    On information and belief, Plaintiff's hospital records remain in the Dean's possession to this day.

**ANSWER**:    Defendants incorporate their Answer to Paragraph 131 and deny any remaining allegations of Paragraph 132.

133.    During the July Meetings, Plaintiff also provided the Dean with a copy of the confirmation receipts from the Apple Store for the repairs made to her computer.

**ANSWER**:    Defendants admit that, during the July Meetings, Plaintiff provided Dean Zimmerman with receipts purporting to be from the Apple Store for repairs purportedly made to her computer. Defendants deny that these documents were sufficient to verify the representations Plaintiff had made regarding her alleged computer failure in March and April 2013 and deny the remaining allegations of Paragraph 133.

134.     Finally, Plaintiff permitted the Law School IT staff to examine her computer for the limited purpose of ascertaining the systems-generated timestamps on the three papers that she had completed but had not been permitted to submit on May 20th.

**ANSWER**:     Defendants admit that Plaintiff failed to submit the three outstanding assignments that were due on May 20, 2013 and that she permitted the Law School IT staff to examine her computer.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding the purpose for which Plaintiff granted such permission.  Defendants also lack knowledge or information sufficient to admit or deny Plaintiff's allegations that she had completed the three outstanding assignments that were due on May 20, 2013 because Plaintiff has failed to provide information sufficient to verify her representations regarding her alleged computer failure and alleged inability to submit her outstanding assignments, two of which were initially due in December 2012, by the May 20, 2013 deadline. Defendants deny the remaining allegations of Paragraph 134.

135.     Before the inspection commenced, Plaintiff showed the Dean and the Law School IT staff that all three papers were stored in a separate, single, and clearly labeled folder on Plaintiff's computer desktop.

**ANSWER**:     Defendants deny the allegations of Paragraph 135.

136.     The Dean supervised this inspection.

**ANSWER**:     Defendants admit that Dean Zimmerman was present while the Law School IT staff conducted the limited examination of Plaintiff's computer. Defendants deny the remaining allegations of Paragraph 136.

43

137.    Upon inspection, the timestamps associated with each file evidenced that the papers had not been modified after the deadline.

**ANSWER**:    Defendants admit that the Law School IT staff's review of Plaintiff's computer indicated that certain files related to assignments that were due on May 20, 2013 had not been modified after the May 20, 2013 deadline, that Plaintiff directed the Law School IT staff person to cease the review of her computer before that person could complete the review or obtain information necessary to verify the representations that Plaintiff had made regarding her computer failure or encryption and her alleged inability to submit the outstanding assignments by the May 20, 2013 deadline, and that the review of Plaintiff's computer did not identify, and Plaintiff has never produced or submitted, a completed or final copy of one of the three papers referenced in Paragraph 137, which was originally due in December 2012. Defendants deny any remaining allegations of Paragraph 137.

138.    In the course of the meeting on July 16th, the Northwestern Law IT technician used Spotlight (a built-in Apple search tool) to conduct a global search of items and files (including private, personal emails, phone text messages, government documents related to Plaintiff's work at the USAO, and correspondence between Plaintiff and her legal counsel) stored on Plaintiff's personal computer.

**ANSWER**:    Defendants admit that, in the course of Plaintiff's meeting with Defendants on July 16, 2013, a Northwestern Law IT technician used Spotlight, which is a built-in Apple search tool, to conduct a search for Plaintiff's paper for her Conflict Management in Legal Practice course. Defendants deny the remaining allegations of Paragraph 138.

44

139.    Plaintiff had not authorized a global search of all files and items stored on her computer.  She directed the IT technician to cease his examination of her computer.

**ANSWER**:    Defendants admit that Plaintiff directed the IT technician to cease his review of her computer before the IT technician could complete the review or obtain information necessary to verify the representations that Plaintiff had made regarding her computer and her alleged inability to submit the outstanding assignments by the May 20, 2013 deadline. Defendants deny the remaining allegations of Paragraph 139.


140.    The Dean demanded that Plaintiff reveal the policies, provisions, and protocols used by the USAO to control, monitor, and authorize access to files stores on its computer network.

**ANSWER**:    Defendants admit that they sought to verify Plaintiff's representations regarding the USAO's alleged encryption of any files on her computer that contained the outstanding assignments that Plaintiff had failed to submit on May 20, 2013 and that Plaintiff has failed to provide information sufficient to verify those representations.  Defendants deny the remaining allegations of Paragraph 140.


141.    The Dean insisted that Plaintiff allow Northwestern Law's IT staff to contact the USAO's IT department and, in fact, ordered Plaintiff to telephone the USAO in his presence during the meeting.

**ANSWER**:    Defendants admit that Dean Zimmerman requested that Plaintiff telephone the USAO IT staff during the July Meetings, and later requested that Plaintiff allow the Law

45

School's IT staff to communicate with the USAO's IT department, in an attempt to verify Plaintiff's representations regarding the USAO's alleged encryption of her computer that contained the outstanding assignments that Plaintiff had failed to submit on May 20, 2013. Defendants also admit that Plaintiff has failed to provide information sufficient to verify those representations and deny the remaining allegations of Paragraph 141.

142.     Cowered by the Dean's demand, Plaintiff phoned the USAO IT department, but no one answered.

**ANSWER**:     Defendants admit that Plaintiff represented to Dean Zimmerman that she phoned the USAO IT department during the July 16, 2013 meeting but lack knowledge or information sufficient to admit or deny the allegations that Plaintiff actually phoned the USAO IT department at that time and that "no one answered." Defendants deny the remaining allegations of Paragraph 142.

143.     Following the July Meetings, the Dean removed the "W" grade from Plaintiff's transcript and permitted some of her papers to be graded by her professors.

**ANSWER**:     Defendants admit that Dean Zimmerman removed the "W" grade for Plaintiff's Summer Public Interest Practicum Course from Plaintiff's transcript following the July Meetings and permitted some of her outstanding papers to be graded even though they were not submitted by the May 20, 2013 deadline and even though Plaintiff has not submitted a final and completed version of her paper for her Conflict Management in Legal Practice course for grading.

46

1235557.1

144. To this day, however, Plaintiff has not received a professor-issued grade in at least two of her courses.

**ANSWER**:    Defendants admit that Plaintiff has not received a professor-issued grade in her Conflict Management in Legal Practice and Communication and Legal Reasoning courses because Plaintiff has failed to provide information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failure in March and April 2013, and the alleged encryption of the files on her personal computer relating to the outstanding assignments that she failed to submit by the May 20, 2013 deadline, and because Plaintiff has not submitted a final and completed version of her paper for her Conflict Management in Legal Practice course for grading. Defendants deny the remaining allegations of Paragraph 144.

145. The Dean refused to remove the "F" grade in her Conflict Management course.

**ANSWER**:    Defendants admit that Plaintiff's transcript reflects a grade of "F" for her Conflict Management course; admit that Plaintiff did not submit by the May 20, 2013 deadline, and still has not submitted, a final and completed version of her final paper for her Conflict Management in Legal Practice course; and admit that the instructor for that course therefore has no basis for assigning or issuing her a different grade for the course. Defendants deny the remaining allegations of Paragraph 145.

1235557.1

146.    The Dean refused to remove the "hold" on her enrollment.

**ANSWER**:    Defendants admit that Dean Zimmerman has not removed the enrollment hold because Plaintiff has failed to provide information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failure in March and April 2013, and the alleged encryption of the files on her personal computer relating to the outstanding assignments that she failed to submit by the May 20, 2013 deadline. Defendants deny the remaining allegations of Paragraph 146.

147.    Finding it impossible to interview for summer associate positions with these damaging marks on her transcript and a "hold" on her enrollment, Plaintiff requested a Leave of Absence ("LOA") from the Law School.

**ANSWER**:    Defendants admit that Plaintiff requested a leave of absence from the Law School in August 2013. Defendants incorporate their Answer to Paragraph 146 and deny the remaining allegations of Paragraph 147.

148.    On August 9, 2013, Plaintiff wrote the Dean, requesting permission to take a LOA. She also informed the Dean that she would be filing a formal grievance with the University.

**ANSWER**:    Defendants admit the allegations of Paragraph 148.

1235557.1

149.    On August 12, 2013, the Dean responded in an email and stated that in order for her to return from a LOA, Plaintiff would need to comply with the following "academic conditions":

i.      Plaintiff must submit hospital records that would substantiate her overnight stay in the hospital on March 3-5[th] and March 6th and 7th of 2013;

ii.     Plaintiff must produce documents to verify that her computer crashed on April 1st and April 25th of 2013;

iii.    Plaintiff must permit the IT department at the Law School to speak directly with the USAO to clarify its encryption practices.

**ANSWER**:     Defendants admit that Plaintiff has failed to provide information sufficient to satisfy the conditions referenced in Paragraph 149 and admit the remaining allegations of Paragraph 149.


150.    In his email of August 12th, the Dean, for the first time, suggested that Plaintiff need not have shared with him all the detailed medical records, test results and images that she had produced to him during the July Meetings.  Instead, the Dean claimed that all he required of Plaintiff was written substantiation that she had stayed over- night in the hospital on March 3-5[th] and March 6th and 7th of 2013.

**ANSWER**:     Defendants admit that, in his email of August 12, 2013, Dean Zimmerman requested information sufficient to verify Plaintiff's representations regarding her alleged overnight hospitalizations in March of 2013 and that Plaintiff has not provided such information. Defendants deny that this was the first time that Dean Zimmerman requested this information and deny the remaining allegations of Paragraph 150.

1235557.1

151.    The Dean further implied in his August 12th email that he would not attest to Plaintiff's good character and fitness on her bar application.

**ANSWER**:    Defendants deny the allegations of Paragraph 151.


152.    Finally, the Dean accused Plaintiff of violating sections 5(b) and 7 of the University Code of Conduct.

**ANSWER**:    Defendants admit that Plaintiff's conduct has raised questions and concerns in Dean Zimmerman's mind about whether her conduct potentially violates rules and regulations of the University and/or the Law School but deny the remaining allegations of Paragraph 151.


153.    The University Code of Conduct section 5(b) prohibits students from "[k]knowingly furnishing false information to the University or any University official." Section 7 of the University Code of Conduct prohibits "[f]ailure to … cooperate with University officials."

**ANSWER**:    Defendants admit the allegations of Paragraph 153.


154.    This was not the first time that the Dean had threatened to bring charges against Plaintiff for violating the University and Law School Codes of Conduct. Beginning in April of 2013, the Dean warned Plaintiff that he would instigate formal charges of academic dishonesty against her.

**ANSWER**:    Defendants deny the allegations of Paragraph 154.

155.    However, although more than a year has elapsed since these threats began, the Dean has failed to bring any type of charge against Plaintiff.

**ANSWER**:    Defendants admit that Dean Zimmerman has not brought any disciplinary or other charges against Plaintiff. Defendants deny the remaining allegations of Paragraph 155.

156.    In late August of 2013, Plaintiff attempted to schedule an appointment with her private psychiatrist, Dr. Rehn (from Meridian Psychiatric Partners) who had just returned from maternity leave.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 156.

157.    Dr. Rehn declined to schedule an appointment with Plaintiff and, instead, informed Plaintiff in a short voicemail message, that she had terminated their physician-patient relationship.  Per the instruction of her primary care physician, Plaintiff again contacted Dr. Rehn to request adequate notice and time to find a new provider before termination of care. Nevertheless, Dr. Rehn refused to communicate with Plaintiff, abruptly abandoning her without psychiatric care and access to continued pharmaceutical management.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 157.

1235557.1

158.     On information and belief, Dr. Rehn terminated the physician-patient relationship with Plaintiff because her supervisor, Dr. Arana, had been advised by the Law School that Plaintiff was manipulating her professional care team to procure extensions on Law School assignments and exams.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 158 regarding whether Dr. Rehn terminated any physician-patient relationship with Plaintiff or the reasons for any such termination.  Defendants deny the remaining allegations of Paragraph 158.

159.     On August 22, 2013, Plaintiff completed, signed and submitted her LOA form. Plaintiff characterized the reason for her leave as "Other" (not "Medical" and not "Personal") and appended a document explaining the basis for her leave.  (See Plaintiff's LOA Request Form, Exhibit C).

**ANSWER**:     Defendants admit the allegations of Paragraph 159.

160.     In the meantime, even though Plaintiff had already provided the Dean with hospital records that collectively evidenced her presence in Northwestern Memorial Hospital Emergency Room on the dates in question, Plaintiff returned to the records departments at the hospital on at least four occasions, seeking patient records that would further confirm the dates on which she had been in the Emergency Room in March.

**ANSWER**:     Defendants deny that Plaintiff "had already provided the Dean with hospital records that collectively evidenced her presence in Northwestern Memorial Hospital Emergency Room on the dates in question" and deny that Plaintiff had or has provided

52

information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 160.

161. The hospital provided Plaintiff with dated records documenting that she was in fact in the Emergency Room on the March dates that she had told Professor McMasters.

**ANSWER**: Defendants admit that Plaintiff had provided records purporting to show that she had received treatment in the Emergency Room in March of 2013 but deny that these records were sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013. Defendants lack knowledge or information sufficient to admit or deny Plaintiff's allegations regarding what, if any, records that the hospital provided to Plaintiff and deny any remaining allegations of Paragraph 161.

162. Plaintiff had these hospital records delivered via Federal Express to the Dean on August 22, 2013.

**ANSWER**: Defendants admit that Dean Zimmerman received documents purporting to be Plaintiff's medical records by Federal Express on or about August 22, 2013 but lack knowledge or information sufficient to admit or deny Plaintiff's allegation that she had these records delivered to Dean Zimmerman. Defendants incorporate their Answer to Paragraph 161 and deny any remaining allegations of Paragraph 162.

1235557.1

163.     Plaintiff also delivered to the Dean at this time, three (3) Apple Store Genius Bar Records documenting her computer difficulties on March 29th and April 24-25th of 2013.

**ANSWER**:     Defendants admit that Plaintiff delivered to Dean Zimmerman records from the Apple Store Genius Bar allegedly documenting her computer difficulties on March 29 and April 24-25, 2013. Defendants deny that these records or any other information Plaintiff has provided is sufficient to verify her representations regarding her alleged computer difficulties.

164.     On August 26, 2013, the Dean informed Plaintiff that the documents she had submitted from Northwestern Memorial Hospital Emergency Department did "not look like one that [he had] seen before from the Emergency Department."

**ANSWER**:     Defendants admit the allegations of Paragraph 164.

165.     The Dean ordered Plaintiff to provide him with the name and contact information for hospital personnel who could verify the documents and sign a medical release that would allow him to speak directly with such person(s).

**ANSWER**:     Defendants admit that Dean Zimmerman asked Plaintiff to provide him with the name and contact information for, and authorize him to speak with, hospital personnel who could verify the authenticity of the documents that Plaintiff had provided because Plaintiff had not and still has not provided information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013. Defendants deny the remaining allegations of Paragraph 165.

1235557.1

166.    Plaintiff declined to allow the Dean unfettered access to her medical professionals.

**ANSWER**:    Defendants admit that Plaintiff failed to provide information sufficient to verify her representations regarding her alleged overnight hospitalizations in March of 2013. Defendants deny the remaining allegations of Paragraph 166.

167.    On September 6, 2013, Plaintiff filed a grievance with the Office of Equal Employment Opportunity Access ("OEOA") of Northwestern University.

**ANSWER**:    Defendants admit that, on or about September 4, 2013, Plaintiff submitted a complaint to the OEOA. Defendants deny the remaining allegations of Paragraph 167.

168.    The Director of the OEOA is designated as the Section 504 Coordinator and is charged with ensuring University compliance with the non-discriminatory requirements of Section 504, the ADA, and applicable federal and state regulations.

**ANSWER**:    Defendants admit the allegations of Paragraph 168.

169.    In her grievance complaint, Plaintiff alleged that the Dean had discriminated against her and harassed her on the basis of her disability (in violation of Section 504 and the ADA) and on the basis of her gender (in violation of Title IX).

**ANSWER**:    Defendants admit that in her OEOA complaint, Plaintiff alleged that Dean Zimmerman discriminated against or harassed her based on her disability. Defendant also admits that on her OEOA intake form, Plaintiff indicated she believed she had been discriminated

1235557.1

against based on her gender because her alleged disability was one that affects only women. Defendants deny the remaining allegations of Paragraph 169.

170.     Plaintiff also alleged that the Dean had failed to follow University and Law School rules and procedures.

**ANSWER**:     Defendants admit that Plaintiff's OEOA complaint contained allegations that Dean Zimmerman did not accord Plaintiff certain rights outlined in the Office of the Provost's Principles Regarding Academic Integrity. Defendants deny any remaining allegations in Paragraph 170.

171.     Shortly after Plaintiff filed her grievance, but one month after she had submitted her LOA form, the Dean "completed" the Plaintiff's signed LOA form.

**ANSWER**:     Defendants admit that Plaintiff submitted a leave of absence ("LOA") form on or about August 22, 2013, and that Dean Zimmerman signed Plaintiff's LOA form on or about September 23, 2013. Defendants deny the remaining allegations of Paragraph 171.

172.     The Dean modified the original LOA form to which Plaintiff had already applied her signature by crossing out Plaintiff's description of the reason for her leave.

**ANSWER**:     Defendants admit the allegations of Paragraph 172 and admit that in approving Plaintiff's LOA request, Dean Zimmerman set forth certain academic conditions in order for Plaintiff to return from leave, because Plaintiff had failed to provide information sufficient to verify the representations she had made regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failure, or the alleged encryption of the

1235557.1

files on her personal computer relating to the outstanding papers that she failed to submit by the

May 20, 2013 deadline.

173.     The Dean also removed the attachment that Plaintiff had submitted with her LOA

form and appended to it his own attachment imposing "Academic Conditions" for return.

**ANSWER**:     Defendants incorporate their Answer to Paragraph 172 of the Complaint

and admit the allegations of Paragraph 173.

174.     The supposed "academic" conditions were:

i.      Plaintiff must sign a release authorizing the Dean to speak with
Northwestern Memorial Hospital personnel who could verify the
Emergency Room discharge papers that Plaintiff had tendered previously;

ii.     Plaintiff must provide still more documentation of her computer failure in
April of 2013; and

iii.    Plaintiff must permit the Law School IT department to speak with the
USAO's IT department concerning the USAO's encryption practices.

**ANSWER**:     Defendants admit that the document attached as Exhibit D to Plaintiff's

Complaint sets forth, *inter alia* the academic conditions set forth in Paragraph 174, and that these

academic conditions were set forth because Plaintiff has failed to provide information sufficient

to verify the representations she had made regarding her alleged overnight hospitalizations in

March of 2013, her alleged computer failure, or the alleged encryption of the files on her

personal computer relating to the outstanding papers that she failed to submit by the May 20,

2013 deadline. Defendants deny the remaining allegations of Paragraph 174.

175.    The Dean noted in his addendum to Plaintiff's Request for a LOA that the Law School "reserves the right to utilize University and/or Law School processes with respect to any possible violations of the University Code of Student Conduct or the Law School Honor Code, including but not limited to concerns about failure to cooperate and dishonesty."  (See Dean's Revision to LOA Form, Exhibit D)

**ANSWER**:    Defendants admit the allegations of Paragraph 175.


176.    The University's Student Handbook (see Exhibit E) requires that in all cases involving allegations of a violation of academic integrity, the student suspected shall at a minimum, be accorded the right to (1) a prompt investigation; (2) reasonable written notice of the violation; (3) reasonable written notice of the procedure involved; (4) a hearing by a neutral decision maker at which the student may be heard, and (5) the right to appeal.  Implementation of any sanctions is to be suspended until all appeals have been exhausted.

**ANSWER**:    Defendants deny that Exhibit E to Plaintiff's Complaint includes a complete copy of the University's Student Handbook. Defendants admit that the University's Student Handbook contains a section titled, "Basic Standards of Academic Integrity," which includes a recitation of certain rights that apply in cases involving allegations of a violation of the standards of academic integrity set forth in the University's Student Handbook.  Defendants deny any remaining allegations of Paragraph 176.


177.    To this day, the Dean has never filed charges against Plaintiff for a violation of academic integrity.

**ANSWER**:    Defendants admit the allegations of Paragraph 177.

1235557.1

178.    The accusations made by the Dean against the Plaintiff have never been investigated by the University.

**ANSWER**:    Defendants deny that Dean Zimmerman made any "accusations" or charges of violations of academic integrity against Plaintiff and deny any remaining allegations of Paragraph 178.

179.    The Plaintiff has never received written notice of suspected violations.

**ANSWER**:    Defendants incorporate their Answer to Paragraph 178 and admit that, at this time, they have not sent Plaintiff a formal written notice of a charge of violations of academic integrity. Defendants deny any remaining allegations of Paragraph 179.

180.    A hearing has never been conducted to determine whether the Plaintiff has committed a violation of the University Code of Conduct.

**ANSWER**:    Defendants incorporate their Answer to Paragraph 178 and admit that a formal hearing has not been conducted to determine whether Plaintiff has committed a violation of the University's Code of Conduct because Plaintiff has not yet been charged with violating the University's Code of Conduct. Defendants deny any remaining allegations of Paragraph 180.

181.    Despite this lack of due (or any) process, the Dean has unilaterally imposed the most severe sanctions upon Plaintiff.

**ANSWER**:    Defendants deny that Plaintiff has been denied due process or any other procedures to which she was entitled under applicable policies and procedures, deny that the

1235557.1

academic conditions that have been implemented in light of Plaintiff's failure to provide information sufficient to verify representations she has made regarding her ability to complete her outstanding course work constitutes sanctions, and deny the remaining allegations of Paragraph 181.

182.    In fall of 2013, pursuant to her grievance complaint, the Northwestern OEOA interviewed Plaintiff at length.  Plaintiff submitted a list of potential witnesses to support her case.

**ANSWER**:    Defendants admit the allegations in the first sentence of Paragraph 182. Defendants deny the remaining allegations of Paragraph 182.

183.    In late November of 2013, Plaintiff, still awaiting adjudication of her OEOA complaint, notified the Dean of her intent to return from her LOA.

**ANSWER**:    Defendants admit that in November of 2013, which was prior to the resolution of her OEOA complaint, Plaintiff notified Dean Zimmerman of her intent to return from her LOA for the spring 2014 term.  Defendants deny any remaining allegations of Paragraph 183.

184.    The Dean denied Plaintiff's request to return from her LOA.  In so doing, the Dean reiterated that Plaintiff had not complied with his "academic conditions."

**ANSWER**:    Defendants admit that, in an email dated November 25, 2013, Dean Zimmerman reiterated to Plaintiff that she had to fulfill the previously communicated academic conditions that were in place because of Plaintiff's failure to provide information sufficient to

60

verify her representations regarding her alleged overnight hospitalizations in March of 2013, her alleged computer failure in March and April 2013, and the alleged encryption of the files on her personal computer relating to the outstanding assignments that she failed to submit by the May 20, 2013 deadline.

185.     The Dean also stated that Plaintiff's LOA was "medical" at least in part.  In actuality, however, Plaintiff had not checked the box labeled "medical" on the LOA form and had specifically disavowed that there was a medical basis for her LOA.

**ANSWER**:     Defendants admit that Plaintiff had not checked the box labeled "medical" on the LOA form that she signed on August 22, 2013, but that Dean Zimmerman noted in his November 25, 2013 email that Plaintiff's LOA was medical in part, and the characterization of Plaintiff's LOA as medical in part was based upon the documentation that Plaintiff initially attached to her LOA form. Defendants deny the remaining allegations of Paragraph 185.

186.     Nonetheless, the Dean stated that, as a pre-condition for her return, Plaintiff must obtain "medical clearance" from her treating medical professionals.

**ANSWER**:     Defendants incorporate their Answer to Paragraph 185 and admit that Dean Zimmerman stated that, as one of the conditions for her return, Plaintiff would need to obtain medical clearance from a medical provider.  Defendants deny the remaining allegations of Paragraph 186.

1235557.1

187.    He further instructed her that "[w]homever evaluates you for medical fitness to return to your studies will need to evaluate you, determine if you need to meet with any other medical professionals to complete medical clearance and share their conclusion with me (you will need to sign a release for this)."  (See Dean's Response to Request to Return from LOA, Exhibit F).

**ANSWER**:    Defendants incorporate their Answer to Paragraph 185 and admit the remaining allegations of Paragraph 187.


188.    Unable to satisfy the Dean's insurmountable and inappropriate conditions. Plaintiff remains on indefinite leave, effectively expelled from the Law School.

**ANSWER**:    Defendants admit that Plaintiff remains on leave from the Law School because she has not satisfied the conditions that have been imposed as a result of the representations that Plaintiff has made regarding her ability to complete her outstanding course work and the reasons for her leave. Defendants deny the remaining allegations of Paragraph 188.


189.    The Northwestern OEOA grievance procedures provide that "[i]nvestigations will be concluded as expeditiously as possible and are usually completed within 30-60 days, though this may vary based on the availability of witnesses, the scope of investigation, or unforeseen circumstances."

**ANSWER**:    Defendants admit the allegations of Paragraph 189.

1235557.1

190.    Although more than nine (9) months (roughly 297 days) have gone by since Plaintiff filed her Northwestern OEOA grievance, the OEOA never issued a finding.

**ANSWER**:    Defendants deny the allegations of Paragraph 190.


191.    As of mid-June 2014, Plaintiff had borrowed over $175,000 in federal student loans to cover expenses related to her education at the Law School.  She accrues over $1000.00 per month in interest on these loans.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 191.


192.    The time period during which Plaintiff was able to defer payment of her student loans lapsed in March of 2014.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 192.


193.    Lacking funds to repay her student loans, Plaintiff applied for and was granted a temporary loan forbearance that began on March 29, 2014 and will end on September 26, 2014. During this forbearance period, the interest on Plaintiff's student loans will continue to accrue and capitalize.  Plaintiff's request for loan forbearance may limit her ability to qualify for additional forbearance or for other loans in the future.

**ANSWER**:    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 193.

1235557.1

194. Plaintiff must begin repayment of her student loans on September 27, 2014.

**ANSWER**: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 194.

195. All of Plaintiff's work experiences over the last seven years have been in the legal field. As a result of Defendants' malfeasance and nonfeasance, Plaintiff has not found employment, legal or otherwise.

**ANSWER**: Defendants deny that they engaged in "malfeasance and nonfeasance" of any kind and lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 195.

196. Due to the uncertainty of Plaintiff's status as a student of the Law School and the current state of her transcript, it is futile for Plaintiff to apply to another law school of similar caliber. The harm caused by Defendants is irreparable and can only be mitigated by expunging all negative materials from Plaintiff's student record and facilitating Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation.

**ANSWER**: Defendants deny the allegations of Paragraph 196.

197. Lacking funds to continue to support herself, Plaintiff relinquished her apartment in Chicago and moved back to California, where she has been living with her parents in their rental apartment and relying fully on their financial support.

**ANSWER**: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 197.

1235557.1

198.     Plaintiff's parents are 60 years old, have no significant assets, savings or retirement funds and earn less than $28,000 in yearly income.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 198.

199.     Plaintiff has used all credit available on her credit cards and has had to apply for additional cards in order to cover basic living expenses.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 199.

200.     Plaintiff has had to reduce the scope and quality of her health treatment in order to reduce her medical costs.  Plaintiff is unsure whether the Law School will permit her to renew her student health insurance when it expires in August of 2014.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 200 but state that, pursuant to student health insurance policy, Plaintiff may renew her student health insurance when it expires in August 2014 by submitting to the University's Office of Risk Management (1) a letter from her treating medical or mental health provider stating that a continued medical leave of absence is necessary and that Plaintiff's return to the University is imminent; (2) a letter from Dean Zimmerman or his designee authorizing her continued leave of absence, which authorization will be provided upon Plaintiff's submission of the other required documentation; (3) a completed health coverage selection form; and (4) a check for the insurance premium. Defendants deny any remaining allegations of Paragraph 200.

201.     Plaintiff relies on weekly therapy sessions with a cognitive behavioral therapist in order to manage her relentless stress.  Plaintiff also takes daily pain medication, including oral medication, vaginal suppositories, and pelvic floor therapy to control the pain triggered by the endometriosis.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 201.


202.     Plaintiff experiences severe anxiety and chronic insomnia due to her (and her family's) financial hardship, as well as her lack of employment and education prospects. Plaintiff's anxiety and insomnia have exacerbated the pelvic and abdominal pain caused by her endometriosis.  Defendants, each of them, have wrongfully caused this emotional distress and physical injury, and have deprived Plaintiff of the opportunity to obtain her juris doctorate and further her legal degree as described above.

**ANSWER**:     Defendants deny that they caused Plaintiff emotional distress, physical injury, or any other damages or injuries and deny that they deprived Plaintiff of the opportunity to obtain her juris doctorate and further her legal degree. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 202.

1235557.1

**Count I**
**Violation of Title III of the Americans with Disabilities Act (ADA),**
**42 U.S.C. 12101 et seq.**
**Discrimination – Disparate Treatment**
**(Northwestern University)**

1.     Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 1 of Count I.

2.     Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases or operates a place of public accommodation.  42 U.S.C. 12182(a).

**ANSWER**:     Defendants admit the allegations of Paragraph 2 of Count I.

3.     By virtue of her endometriosis and co-morbid anxiety and depression, Plaintiff is a person with a person with a "disability" as defined in 42 U.S.C. Sec 12102(1).

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations that Plaintiff's anxiety and depression are "co-morbid" conditions of her endometriosis but admit that Plaintiff is a person with a disability under the ADA to the extent that her medical conditions qualify as a disability under the ADA. Defendants deny any remaining allegations of Paragraph 3 of Count I.

67

4.     Plaintiff was "otherwise qualified" for the study of law at the Law School.

**ANSWER**:     Defendants deny the allegations of Paragraph 4 of Count I.


5.     The University is a "place of public accommodation" as defined by 42 U.S.C. 12181(7).

**ANSWER**:     Defendants admit the allegations of Paragraph 5 of Count I.


6.     At all times relevant hereto, Plaintiff was meeting the University's and the Law School's legitimate academic expectations.

**ANSWER**:     Defendants deny the allegations of Paragraph 6 of Count I.


7.     As described above the Dean took a number of adverse actions against Plaintiff, including but not limited to: (a) putting and indefinite "hold" on Plaintiff's registration; (b) unilaterally imposing unwarranted marks on Plaintiff's transcript; (d) ordering numerous staff and administrators from the University and Law School (including personnel from the SSD Office, Counseling Office, Career Strategy Center, Office of the Law School Dean, Records and Registration Office and Student Services) to refrain from communicating with or assisting her; (e) conditioning Plaintiff's return from her leave of absence on inappropriate and unduly burdensome criteria; and (f) disciplining Plaintiff without affording her access to University and Law School procedures that would have provided her with due process.

**ANSWER**:     Defendants deny the allegations of Paragraph 7 of Count I.

1235557.1

8.      Plaintiff suffered further adverse action when, despite her attempt to notify the University of the Dean's discriminatory actions, the University ignored her complaints, violated its own procedures, and failed to adjudicate her OEOA claim, leaving her on indefinite "leave" status and thereby effectively and constructively expelling her.

**ANSWER**:     Defendants deny the allegations of Paragraph 8 of Count I.

9.      On information and belief, similarly situated students without disabilities were not subjected to the adverse actions described above.

**ANSWER**:     Defendants deny the allegations of Paragraph 9 of Count I.

10.     Plaintiff suffered an interruption of her program of legal studies, a delay in her career, loss of income and opportunity, mental anguish, and irreparable reputational, academic, and personal injury.

**ANSWER**:     Defendants deny the allegations of Paragraph 10 of Count I.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.      Enter a declaratory judgment that the University interfered with Plaintiff's enjoyment of her rights under the ADA, and discriminated against her in violation of Title III of the ADA;

B.      Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff on the basis of disability;

1235557.1

C.    Order the University to expunge all negative materials from Plaintiff's student

record and to facilitate Plaintiff's transfer or admission to another law school or

degree program of similar caliber and reputation;

D.    Order the University to direct the Dean to refrain from further interference with

Plaintiff's transcript, with Plaintiff's transfer of another degree program, with

Plaintiff's application to the bar, and with Plaintiff's future education and career

prospects;

E.    Award attorney's fees and costs; and

F.    Award such other relief as the Court deems just and proper.

**ANSWER**:    Defendants deny that Plaintiff is entitled to judgment in her favor or to any

of the relief listed in Count I.


**Count II**
**Violation of Title III of the Americans with Disabilities Act (ADA),**
**42 U.S.C. 12101 et seq.**
**Interference, Coercion and Intimidation**
**(Northwestern University)**


11.    Plaintiff re-alleges and incorporates by reference each and every allegation made

in the foregoing paragraphs.

**ANSWER**:    Defendants incorporate their Answers to the foregoing Paragraphs as their

Answer to Paragraph 11 of Count II.


12.    42 U.S.C. 12203(b) provides that: It shall be unlawful to coerce, intimidate,

threaten or interfere with any individual in the exercise or enjoyment of or on account of his or

her having exercised or enjoyed … any right granted or protected by this chapter.

1235557.1

**ANSWER**:   Defendants admit the allegations of Paragraph 12 of Count II.


13.   Plaintiff was exercising her rights under the ADA when she sought reasonable academic accommodations for her disability.  She was likewise exercising her rights under the ADA when she sought to avail herself of the goods, services, facilities, privileges, advantages and accommodations of the University and Law School.

**ANSWER**:   Defendants admit Plaintiff was exercising her rights under the ADA when she requested accommodations for her medical conditions to the extent those conditions qualify as a disability under the ADA and that Defendants have provided Plaintiff with any and all reasonable accommodations to which she is entitled under the ADA. Defendants deny that all of the accommodations she has sought are reasonable accommodations and denies any remaining allegations of Paragraph 13 of Count II.


14.   The Dean coerced, intimidated, threatened and interfered with Plaintiff's exercise and enjoyment of her rights by his actions and omissions as described above, including but not limited to: (a) putting her registration on an indefinite "hold"; (b) coercing her into providing the entirety of her medical records relating to her spring on 2013 hospitalization; (c) effectively excommunicating Plaintiff from the University and Law School communities by ordering University and Law School personnel not to communicate with her; (d) interfering with Plaintiff's participation in academic pursuits, including the annual writing competition for journal membership; (e) threatening to refuse to vouch for Plaintiff's character and fitness to the bar examiners and threatening to share negative opinions about Plaintiff with the deans of other law schools; (f) demanding that Plaintiff meet with him for unspecified reasons and without the

assistance of counsel or a representative from the SSD; and (g) interrogating, intimidating and threatening Plaintiff over the course of a two day meeting.

      **ANSWER**:     Defendants deny the allegations of Paragraph 14 of Count II.

      15.    Plaintiff suffered an interruption of her program of legal studies, a delay in her career, loss of income and opportunity, mental anguish, and irreparable reputational, academic, and personal injury.

      **ANSWER**:     Defendants deny the allegations of Paragraph 15 of Count II.

      WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.    Enter a declaratory judgment that the University interfered with Plaintiff's enjoyment of her rights under the ADA, and coerced and intimidated her in violation of Title III of the ADA;

B.    Issue an injunction against the University to prevent the University from engaging in further acts of coercion and interference against Plaintiff on the basis of disability;

C.    Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

1235557.1

D.     Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or other degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

E.     Award attorney's fees and costs; and

F.     Award such other relief as the Court deems just and proper.

**ANSWER**:     Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief listed in Count II.

**Count III**
**Violation of Title III of the Americans with Disabilities Act (ADA),**
**42 U.S.C. 12101 et seq.**
**Retaliation**
**(Northwestern University)**

16.     Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 16 of Count III.

17.     When Plaintiff requested reasonable academic accommodations she was engaged in a statutorily protected activity.

**ANSWER**:     Defendants admit the allegations of Paragraph 17 of Count III.

18.     As a direct result of, and in retaliation for, Plaintiff's exercise of her right to request reasonable academic accommodations in May of 2013, the Dean sanctioned her by undertaking the adverse actions alleged above in paragraph 209.

**ANSWER**:     Defendants deny the allegations of Paragraph 18 of Count III.


19.     Plaintiff suffered an interruption of her program of legal studies, a delay in her career, loss of income and opportunity, mental anguish, and irreparable reputational, academic, and personal injury.

**ANSWER**:     Defendants deny the allegations of Paragraph 19 of Count III.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University retaliated against Plaintiff in violation of Title III of the ADA;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of discrimination and retaliation against Plaintiff on the basis of disability;

C.     Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

D.     Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or other degree

1235557.1

program, with Plaintiff's application to the bar, and with Plaintiff's future

education and career prospects;

E.        Award attorney's fees and costs; and

F.        Award such other relief as the Court deems just and proper.

**ANSWER**:      Defendants deny that Plaintiff is entitled to judgment in her favor or to any

of the relief requested in Count III.


### Count IV
### Violation of Title III of the Americans with Disabilities Act (ADA),
### 42 U.S.C. 12101 et seq.
### Harassment/Hostile Learning Environment
### (Northwestern University)

20.        Plaintiff re-alleges and incorporates by reference each and every allegation made

in the foregoing paragraphs.

**ANSWER**:      Defendants incorporate their Answers to the foregoing Paragraphs as their

Answer to Paragraph 20 of Count IV.


21.        As a person with a disability, Plaintiff is a member of a protected group.

**ANSWER**:      Defendants admit that Plaintiff is protected by the ADA to the extent she

has a disability or otherwise is protected under the ADA.  Defendants deny any remaining

allegations of Paragraph 21 of Count IV.


22.        Plaintiff was subjected to unwelcome harassment as described above.  Some

incidents of harassment include, but are not limited to, the following: (a) the Dean accused

Plaintiff of manipulation and deceit and disparaged her character to a broad audience of Law

1235557.1

School and University personnel; and (b) The Dean inappropriately suggested that Plaintiff

required mental health treatment; (c) The Dean misinformed Plaintiffs' medical providers that

Plaintiff was fabricating her illness; (d) on information and belief, the Dean and/or another

representative from the Law School had unauthorized communications with Plaintiff's private

psychiatrist(s) in violation of the Illinois Mental Health and Developmental Disabilities

Confidentiality Act; (e) the Dean coerced Plaintiff into providing him with confidential medical

records of an extremely personal and intimate nature; (f) the Dean conditioned Plaintiff's former

employer; (i) the Dean inappropriately required Plaintiff to obtain "medical clearance" in order

to return to the law school.

> **ANSWER**:     Defendants deny the allegations of Paragraph 22 of Count IV.


23.     The Dean's harassment of Plaintiff was based on her disability.

> **ANSWER**:     Defendants deny the allegations of Paragraph 23 of Count IV.


24.     The Dean's harassment was sufficiently severe and pervasive that it altered the

conditions of Plaintiff's education and created an abusive education environment.

> **ANSWER**:     Defendants deny the allegations of Paragraph 24 of Count IV.


25.     The Dean used his authority as the Associate Dean/Dean of Students for the Law

School to perpetrate his harassment of Plaintiff.

> **ANSWER**:     Defendants deny the allegations of Paragraph 25 of Count IV.

1235557.1

26.     Plaintiff put both the Law School and University communities on notice of the harassment, and even filed a grievance complaint with the OEOA.

**ANSWER**:     Defendants admit that Plaintiff filed a grievance complaint with the OEOA. Defendants deny the remaining allegations of Paragraph 26 of Count IV.

27.     The University did nothing to stop the harassment.

**ANSWER**:     Defendants deny the allegations of Paragraph 27 of Count IV.

28.     The Plaintiff suffered an interruption of her program of legal studies, a delay in her career, loss of income and opportunity, mental anguish, and irreparable reputational, academic, and personal injury.

**ANSWER**:     Defendants deny the allegations of Paragraph 28 of Count IV.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University subjected Plaintiff to harassment and a hostile educational environment in violation of Title III of the ADA;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of harassment against Plaintiff on the basis of disability;

C.     Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer to another law school or degree program of similar caliber and reputation;

1235557.1

D.      Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

E.      Award attorney's fees and costs; and

F.      Award such other relief as the Court deems just and proper.

**ANSWER**:    Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count IV.


**Count V**
**Violation of Title III of the Americans with Disabilities Act (ADA),**
**42 U.S.C. 12101 et seq.**
**Failure to Accommodate**
**(Northwestern University)**


29.      Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:    Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 29 of Count V.


30.      The Dean refused to accommodate Plaintiff's requests for reasonable academic accommodations, including a delay in her exam schedule.

**ANSWER**:    Defendants deny the allegations of Paragraph 30 of Count V.

1235557.1

31.     As a result of Dean's refusal, Plaintiff was forced to take a final exam while extremely ill and subject to the sedating effects of multiple medications.

**ANSWER**:     Defendants deny the allegations of Paragraph 31 of Count V.


32.     The Dean's failure to accord Plaintiff reasonable academic accommodations denied her the benefits of the services, programs, and activities to which she is otherwise entitled as a student of the Law School and University, thereby violating Plaintiff's rights under the ADA and the regulations promulgated thereunder.

**ANSWER**:     Defendants deny the allegations of Paragraph 32 of Count V.


33.     As a direct and proximate result of Dean's failure to accommodate her disability, Plaintiff suffered irreparable reputational, academic, and personal injury, and mental anguish.

**ANSWER**:     Defendants deny the allegations of Paragraph 33 of Count V.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University discriminated against Plaintiff by failing to afford her reasonable accommodations for her disability in violation of Title III of the ADA;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff on the basis of disability;

C.     Order Plaintiff's exam grade in her Constitutional Law class removed from her transcript;

1235557.1

D.      Award attorney's fees and costs; and

E.      Award such other relief as the Court deems just and proper.

**ANSWER**:      Defendants deny Plaintiff is entitled to judgment in her favor or to any of

the relief requested in Count V.


**Count VI**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. 701 et seq.**
**Discrimination – Disparate Treatment**
**(Northwestern University)**


34.     Plaintiff re-alleges and incorporates by reference each and every allegation made

in the foregoing paragraphs.

**ANSWER**:      Defendants incorporate their Answer to the foregoing Paragraphs as their

Answer to Paragraph 34 of Count VI.


35.     The Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United
> States, as defined in Section 705(20) of this title shall, solely by
> reason of her or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial
> assistance… 29 U.S.C. 794(a).


**ANSWER**:      Defendants admit the allegations of Paragraph 35 of Count VI.


36.     By virtue of her endometriosis and co-morbid anxiety and depression, Plaintiff is

an individual with a disability as defined by Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. 705(20).

1235557.1

**ANSWER**:    Defendants admit that Plaintiff is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973 ("Section 504") to the extent that her medical conditions qualify as a disability under Section 504. Defendants lack knowledge or information sufficient to admit or deny the allegation that Plaintiff's anxiety and depression are "co-morbid" conditions of her endometriosis. Defendants deny any remaining allegations of Paragraph 36 of Count VI.

37.    Plaintiff is otherwise qualified for the study of law at the Law School.

**ANSWER**:    Defendants deny the allegations of Paragraph 37 of Count VI.

38.    Northwestern University, as a "university" is a "program or activity" as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794(b).

**ANSWER**:    Defendants admit the allegations of Paragraph 38 of Count VI.

39.    Northwestern University received federal financial assistance, as defined by 29 U.S.C. 794, either directly or indirectly through federal financial aid, and as such, may not discriminate against a person because of her disability.

**ANSWER**:    Defendants deny that they discriminated against Plaintiff or any other individual on the basis of disability. Defendants admit the remaining allegations of Paragraph 39 of Count VI.

1235557.1

40. Plaintiff specifically re-alleges paragraphs 203-212 above.

**ANSWER**: Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 40 of Count VI because the Complaint does not contain any paragraphs numbered 203-212. To the extent Plaintiff refers to the paragraphs set forth in Count I, Defendants incorporate their Answers to Paragraphs 1-10 of Count I as their Answer to Paragraph 40 of Count VI.

41. Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, and subjected to discrimination at the University.

**ANSWER**: Defendants deny the allegations of Paragraph 41 of Count VI.

42. In its disparate treatment of Plaintiff, the University acted willfully, deliberately and intentionally or with deliberate indifference toward her federally protected rights.

**ANSWER**: Defendants deny the allegations of Paragraph 42 of Count VI.

43. Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

**ANSWER**: Defendants deny the allegations of Paragraph 43 of Count VI.

44. The University wrongfully caused Plaintiff to be discriminated against and constructively and effectively expelled from the Law School, all in violation of her rights under Section 504 of the Rehabilitation Act of 1973.

**ANSWER**: Defendants deny the allegations of Paragraph 44 of Count VI.

1235557.1

45.     Plaintiff was deprived by the University of the opportunity to complete her study of law, obtain a juris doctorate degree, and pursue a legal career.

**ANSWER**:     Defendants deny the allegations of Paragraph 45 of Count VI.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University discriminated against Plaintiff solely by reason of her disability in violation of the Rehabilitation Act;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff solely by reason of her disability;

C.     Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

D.     Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

E.     Award Plaintiff money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendants in an amount to be proven at trial;

F.     Award attorney's fees and costs; and

G.     Award such other relief as the Court deems just and proper.

1235557.1

**ANSWER**:     Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count VI.


### Count VII
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. 701 et seq.
### Interference, Coercion and Intimidation
### (Northwestern University)

46.     Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 46 of Count VII.


47.     Plaintiff specifically re-alleges paragraphs 213-217 above.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 47 because the Complaint does not contain any paragraphs numbered 213-217. To the extent Plaintiff refers to the paragraphs set forth in Count II, Defendants incorporate their Answers to Paragraphs 11-15 of Count II as their Answer to Paragraph 47 of Count VII.


48.     Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, and subjected to discrimination at the University.

**ANSWER**:     Defendants deny the allegations of Paragraph 48 of Count VII.

1235557.1

49.     The University acted willfully, deliberately and intentionally or with deliberate indifference toward Plaintiff's federally protected rights.

**ANSWER**:     Defendants deny the allegations of Paragraph 49 of Count VII.

50.     Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

**ANSWER**:     Defendants deny the allegations of Paragraph 50 of Count VII.

51.     The University wrongfully caused Plaintiff to be discriminated against, to suffer interference, coercion and intimidation, and to be constructively and effectively expelled from the Law School, all in violation of her rights under Section 504 of the Rehabilitation Act of 1973.

**ANSWER**:     Defendants deny the allegations of Paragraph 51 of Count VII.

52.     Plaintiff was deprived by the University of the opportunity to complete her study of law, obtain a juris doctorate degree, and pursue a legal career.

**ANSWER**:     Defendants deny the allegations of Paragraph 52 of Count VII.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University discriminated against Plaintiff on the basis of her disability in violation of the Rehabilitation Act;

1235557.1

B.      Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff solely by reason of her disability;

C.      Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

D.      Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

E.      Award Plaintiff money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendants in an amount to be proven at trial;

F.      Award attorney's fees and costs; and

G.      Award such other relief as the Court deems just and proper.

**ANSWER**:      Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count VII.


**Count VIII**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. 701 et seq.**
**Retaliation**
**(Northwestern University)**


53.      Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

1235557.1

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 53 of Count VIII.

54.     Plaintiff specifically re-alleges paragraphs 218-221 above.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 54 of Count VIII because the Complaint does not contain any paragraphs numbered 218-221. To the extent Plaintiff refers to the paragraphs set forth in Count III, Defendants incorporate their Answers to Paragraphs 16-19 of Count III as their Answer to Paragraph 54 of Count VIII.

55.     Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, and subjected to discrimination at the University.

**ANSWER**:     Defendants deny the allegations of Paragraph 55 of Count VIII.

56.     In its retaliation against Plaintiff for her exercise of federally protected rights, the Defendant acted willfully, deliberately and intentionally or with deliberate indifference.

**ANSWER**:     Defendants deny the allegations of Paragraph 56 of Count VIII.

57.     Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

**ANSWER**:     Defendants deny the allegations of Paragraph 57 of Count VIII.

1235557.1

58.     The University wrongfully caused Plaintiff to be discriminated and retaliated against, and to be constructively and effectively expelled from the Law School, all in violation of her rights under Section 504 of the Rehabilitation Act of 1973.

**ANSWER**:     Defendants deny the allegations of Paragraph 58 of Count VIII.


59.     Plaintiff was deprived by the University of the opportunity to complete her study of law, obtain a juris doctorate degree, and pursue a legal career.

**ANSWER**:     Defendants deny the allegations of Paragraph 59 of Count VIII.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University retaliated against Plaintiff for the exercise of her statutorily protected rights in violation of the Rehabilitation Act;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of retaliation and discrimination against Plaintiff solely by reason of her disability;

C.     Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

D.     Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

1235557.1

E.     Award Plaintiff money reasonably calculated to compensate her for all monetary

damages sustained as a result of the discrimination by Defendants in an amount to

be proven at trial;

F.     Award attorney's fees and costs; and

G.     Award such other relief as the Court deems just and proper.

**ANSWER**:     Defendants deny that Plaintiff is entitled to judgment in her favor or to the

relief requested in Count VIII.


### Count IX
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. 701 et seq.
### Harassment/Hostile Learning Environment
### (Northwestern University)


60.     Plaintiff re-alleges and incorporates by reference each and every allegation made

in the foregoing paragraphs.

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their

Answer to Paragraph 60 of Count IX.


61.     Plaintiff specifically re-alleges paragraphs 222-230 above.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the

allegations of Paragraph 61 of Count IX because the Complaint does not contain any paragraphs

numbered 222-230. To the extent Plaintiff refers to the paragraphs set forth in Count IV,

Defendants incorporate their Answers to Paragraphs 20-28 of Count IV as their Answer to

Paragraph 61 of Count IX.

1235557.1

62.     Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, and subjected to discrimination at the University.

**ANSWER**:     Defendants deny the allegations of Paragraph 62 of Count IX.

63.     The University acted willfully, deliberately and intentionally or with deliberate indifference in harassing (and/or acquiescing to the harassment of Plaintiff) and maintaining hostile learning environment.

**ANSWER**:     Defendants deny the allegations of Paragraph 63 of Count IX.

64.     Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

**ANSWER**:     Defendants deny the allegations of Paragraph 64 of Count IX.

65.     The University wrongfully caused Plaintiff to be discriminated against and subject to harassment and to be constructively and effectively expelled from the Law School, all in violation of her rights under Section 504 of the Rehabilitation Act of 1973.

**ANSWER**:     Defendants deny the allegations of Paragraph 65 of Count IX.

66.     Plaintiff was deprived by the University of the opportunity to complete her study of law, obtain a juris doctorate degree, and pursue a legal career.

**ANSWER**:     Defendants deny the allegations of Paragraph 66 of Count IX.

1235557.1

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.  Enter a declaratory judgment that the University retaliated against Plaintiff for the exercise of her statutorily protected rights in violation of the Rehabilitation Act;

B.  Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff solely by reason of her disability;

C.  Order the University to expunge all negative materials from Plaintiff's student record and to facilitate Plaintiff's transfer or admission to another law school or degree program of similar caliber and reputation;

D.  Order the University to direct the Dean to refrain from further interference with Plaintiff's transcript, with Plaintiff's transfer to another law school or degree program, with Plaintiff's application to the bar, and with Plaintiff's future education and career prospects;

E.  Award Plaintiff money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendants in an amount to be proven at trial;

F.  Award attorney's fees and costs; and

G.  Award such other relief as the Court deems just and proper.

**ANSWER**:    Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count IX.

**Count X**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. 701 et seq.**
**Failure to Accommodate**
**(Northwestern University)**

67.     Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:     Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 67 of Count X.

68.     Plaintiff specifically re-alleges paragraphs 231-235 above.

**ANSWER**:     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 68 of Count X because the Complaint does not contain any paragraphs numbered 231-235. To the extent Plaintiff refers to the paragraphs set forth in Count V, Defendants incorporate their Answers to Paragraphs 29-33 of Count V as their Answer to Paragraph 68 of Count X.

69.     Solely by reason of her disability, Plaintiff was excluded from the participation in, denied the benefits of, and subjected to discrimination at the University.

**ANSWER**:     Defendants deny the allegations of Paragraph 69 of Count X.

70.     The University intentionally discriminated or acted with deliberate indifference in failing to provide appropriate and necessary accommodations to Plaintiff so that she could continue in her study of law at the Law School.

**ANSWER**:     Defendants deny the allegations of Paragraph 70 of Count X.

71.     Such acts, omissions and failures by the University proximately caused injuries to Plaintiff.

**ANSWER**:     Defendants deny the allegations of Paragraph 71 of Count X.

72.     The University wrongfully caused Plaintiff to be discriminated against, denied reasonable accommodations, and constructively and effectively expelled from the Law School, all in violation of her rights under Section 504 of the Rehabilitation Act of 1973.

**ANSWER**:     Defendants deny the allegations of Paragraph 72 of Count X.

73.     Plaintiff was deprived by the University of the opportunity to complete her study of law, obtain a juris doctorate degree, and pursue a legal career.

**ANSWER**:     Defendants deny the allegations of Paragraph 73 of Count X.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Enter a declaratory judgment that the University discriminated against Plaintiff by failing to afford her reasonable accommodations for her disability in violation of the Rehabilitation Act;

B.     Issue an injunction against the University to prevent the University from engaging in further acts of discrimination against Plaintiff solely by reason of her disability;

C.     Order the Plaintiff's exam grade in her Constitutional Law class removed from her transcript;

1235557.1

D.      Award Plaintiff money reasonably calculated to compensate her for all monetary damages sustained as a result of the discrimination by Defendants in an amount to be proven at trial;

F.      Award attorney's fees and costs; and

G.      Award such other relief as the Court deems just and proper.

**ANSWER**:      Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count X.

## Count XI
### Breach of Contract
### (Northwestern University)

Defendants make no response to Count XI of the Complaint in this pleading as they have filed contemporaneously with this Answer a Motion to Dismiss Count XI.

### Count XII
### Intentional Infliction of Emotional Distress
### (Dean Zimmerman and Northwestern University)

84.      Plaintiff re-alleges and incorporates by reference each and every allegation made in the foregoing paragraphs.

**ANSWER**:      Defendants incorporate their Answers to the foregoing Paragraphs as their Answer to Paragraph 84 of Count XII.

85.      As Associate Dean/Dean of Students of the Law School, the Dean was in a position of power and authority over Plaintiff.  Indeed, the Dean exerted almost complete control over the success or failure of Plaintiff's law school career and future professional possibilities.

94

**ANSWER**:     Defendants admit that Dean Zimmerman is the Associate Dean/Dean of

Students of the Law School, which is a position of authority over students at the Law School.

Defendants deny the remaining allegations of Paragraph 85 of Count XII.


86.     The Dean's conduct toward Plaintiff was extreme and outrageous.  The Dean

acted in a manner that was extreme and outrageous when he, among other things: (a) insisted that

Plaintiff provide him with her private medical records, including images and reports from

gynecological and intestinal examination; (b) abused his authority(for example, by putting a

"hold" on Plaintiff's registration, imposing failing grades on her transcript) in order to coerce

Plaintiff into producing those records; (c) interfered with Plaintiff's relationship with her private

psychiatrist, causing her to lose psychiatric and pharmacological care; (d) disparaged Plaintiff's

reputation with her medical providers; (e) forced Plaintiff to take a six hour exam while

extremely ill; (f) threatened to defame Plaintiff's reputation amongst other law school deans such

that Plaintiff would be unable to transfer to another law school; (g) demanded access to

Plaintiff's health care providers; (h) demanded access to Plaintiff's summer employer; (i)

authorized the University's IT technician to make a blanket search of Plaintiff's computer; (j)

threatened to refuse to vouch for Plaintiff's good character and fitness to the bar examiners; (k)

interrogated Plaintiff over the course of a six hour meeting, during which Plaintiff was not

allowed to be accompanied by counsel or a representative from the SSD; (l) rendered it

impossible for Plaintiff to interview for summer associate and judicial clerkship positions; (m)

maligned Plaintiff's reputation to the Law School and University communities, rendering her a

veritable pariah on campus; and (n) imposed inappropriate and burdensome conditions on

Plaintiff's return from her LOA, such that Plaintiff has been constructively expelled from the Law School.

     **ANSWER**:    Defendants deny the allegations of Paragraph 86 of Count XII.


87.    Plaintiff was particularly susceptible to emotional distress because of her disability and co-morbid anxiety and depression.

     **ANSWER**:    Defendants deny the allegations of Paragraph 87 of Count XII.


88.    The Dean was aware of Plaintiff's susceptibility and knew that his conduct would cause Plaintiff emotional distress.

     **ANSWER**:    Defendants deny the allegations of Paragraph 88 of Count XII.


89.    Plaintiff reasonably believed the Dean would carry out his threats since he was in a position of authority and had in fact already abused that authority by taking unilateral disciplinary actions against her.

     **ANSWER**:    Defendants deny the allegations of Paragraph 89 of Count XII.


90.    The Dean's conduct constituted a course of acts intended to humiliate, shame and embarrass Plaintiff and to irreparably damage her reputation.

     **ANSWER**:    Defendants deny the allegations of Paragraph 90 of Count XII.

1235557.1

91.     As a proximate result of the intentional acts by the Dean and his abuse of his authority, Plaintiff suffered shame, humiliation, embarrassment, anguish, damage to her self-esteem and extreme emotional distress.

**ANSWER**:     Defendants deny the allegations of Paragraph 91 of Count XII.


92.     Plaintiff's emotional distress has resulted in sleep, eating and mood disturbances, isolation and withdrawal, loss of community reputation, and exacerbation of anxiety and depression.

**ANSWER**:     Defendants deny the allegations of Paragraph 92 of Count XII.


93.     Plaintiff has required increased medical and/or psychological/psychiatric care as a result of the malfeasance and nonfeasance of Defendants.

**ANSWER**:     Defendants deny the allegations of Paragraph 93 of Count XII.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in favor of Plaintiff making the following findings and granting the following relief:

A.     Award Plaintiff money reasonably calculated to compensate her for all monetary damages sustained as a result of the Defendant's intentional infliction of emotional distress in an amount to be proven at trial;

B.     Award punitive damages;

C.     Award attorney's fees and costs; and

D.     Award such other relief as the Court deems just and proper.

1235557.1

**ANSWER**:     Defendants deny that Plaintiff is entitled to judgment in her favor or to any of the relief requested in Count XII.

## Count XIII
### Defamation (Per Se and/or Per Quod)
### (Dean Zimmerman and Northwestern University)

Defendants make no response to Count XIII of the Complaint in this pleading as they have filed contemporaneously with this Answer a Motion to Dismiss Count XIII.

## Count XIV
### Public Disclosure of Private Facts
### (Dean Zimmerman)

Defendants make no response to Count XIV of the Complaint in this pleading as they have filed contemporaneously with this Answer a Motion to Dismiss Count XIV.

## Count XV
### Tortious Interference with Contractual Relations
### (Northwestern University)

Defendants make no response to Count XV of the Complaint in this pleading as they have filed contemporaneously with this Answer a Motion to Dismiss Count XV.

1235557.1

## **AFFIRMATIVE DEFENSES**

1.      Plaintiff fails to state a claim for which relief can be granted for breach of contract, intentional infliction of emotional distress, defamation, public disclosure of private facts, or tortious interference with contractual relations.

2.      All of Plaintiff's allegations against Defendant Clifford Zimmerman relate to his conduct as the Associate Dean/Dean of Students of the Law School while he was acting solely in his capacity as Associate Dean/Dean of Students of the Law School.

3.      Counts I-X are barred because Defendants would have taken the actions they took regardless of Plaintiff's disability and regardless of any protected activity in which Plaintiff engaged.

4.      Counts IV and VIII are barred pursuant to *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

5.      Counts V and X are barred because Defendants undertook good faith efforts in consultation with Plaintiff to identify and provide Plaintiff with reasonable accommodations that would provide her with an equally effective opportunity that would not fundamentally alter the nature of the public accommodation.

6.      Some or all of Plaintiff's claims barred, in whole or in part, by the applicable statute of limitations.

7.      Some or all of Plaintiff's state law claims are barred, in whole or in part, because Defendants' communications were true and/or protected by a qualified or other privilege.

8.      At all relevant times, Defendants acted in good faith and had reasonable grounds to believe that their actions did not violate any federal or state statute, regulation, or common law.

1235557.1

9.      The injuries alleged and damages sought by Plaintiff were caused by her own actions.

10.      Plaintiff has failed to mitigate her damages, if any.

Defendants expressly reserve the right to rely upon any additional defenses that may become available or apparent during the proceedings in this matter and hereby reserve their right to amend their answer and assert any such defenses.

Respectfully submitted,

s/Scott L. Warner - 06231380
One of the Attorneys for Defendants
NORTHWESTERN UNIVERSITY and
CLIFFORD ZIMMERMAN

Scott L. Warner (No. 06231380)
Gwendolyn B. Morales (No. 06297233)
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated: September 2, 2014

1235557.1

## CERTIFICATE OF SERVICE

I hereby certify that, on September 2, 2014, I electronically filed the foregoing ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT with the Clerk of the Court using the CM/ECF system to the following:

> Jill Calian
> Rachael Gross
> Calian & Gross, LLP
> 1940 Sherman Avenue, Suite A,
> Evanston, IL 60201

> s/Scott L. Warner-06297233
> slw@franczek.com

> FRANCZEK RADELET P.C.
> 300 South Wacker Drive
> Suite 3400
> Chicago, IL 60606
> 312.986.0300

1235557.1