**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNIE LIU,** | | |
| **Plaintiff,** | | |
| | | |
| **v.** | | **No. 14 CV 04993** |
| | | **Judge Sara Ellis** |
| **NORTHWESTERN UNIVERSITY,** | | **Magistrate Judge Susan Cox** |
| **and CLIFFORD ZIMMERMAN,** | | |
| **an individual,** | | |
| **Defendants.** | | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION**
**TO DISMISS COUNTS XI, XIII, XIV and XV OF THE COMPLAINT**

Plaintiff is a student at the Northwestern University School of Law who is currently on a leave of absence. In approving Plaintiff's request to begin her leave in the fall of 2013, Northwestern University set forth certain academic conditions that she would need to meet in order to return. These conditions were based upon the University's need to verify the accuracy of various representations Plaintiff had made to obtain extensions of, or justify her failure to meet, deadlines for the submission of her academic work. Because Plaintiff has not provided information sufficient to verify the accuracy of these representations, she remains on leave.

Rather than provide the information the University has requested, Plaintiff has filed this fifteen-count lawsuit against Northwestern and the Dean of Students at Northwestern's School of Law. Plaintiff's claims for breach of contract against Northwestern (Count XI), defamation against both Defendants (Count XIII), public disclosure of private facts against Dean Zimmerman (Count XIV), and tortious interference with contract against Northwestern (Count XV) are the subject of this motion to dismiss. As explained below, these four counts must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## FACTS[1]

Plaintiff, Annie Liu, is a student at Northwestern University School of Law ("Law School"). Compl. ¶ 24. Plaintiff enrolled in the Law School in the fall of 2011, and in the spring of 2012, provided documentation to Northwestern University ("Northwestern" or "University") indicating that she had endometriosis, major depressive disorder, and anxiety. *Id*. at ¶¶ 24-26. The University provided Plaintiff a number of accommodations, including alternative-testing conditions, extended time for in-class written assignments, note-taking services, and flexibility regarding attendance and academic deadlines. *Id*. at ¶¶ 27-28. Plaintiff also took a medical leave of absence from the Law School for the spring term of 2012 and returned from that leave in the fall of 2012. *Id*. at ¶¶ 29, 31.

On April 25, 2013, just prior to the spring 2013 exam period, Plaintiff emailed the Dean of Students at the Law School, Defendant Clifford Zimmerman ("Dean Zimmerman"), to tell him that her computer had malfunctioned. *See id*. at ¶¶ 35, 38. The next morning, on April 26, 2013, Plaintiff met with Dean Zimmerman in person to request a delay in her exam schedule because of her alleged computer malfunction. *Id*. at ¶ 39. At that meeting, Plaintiff did not tell Dean Zimmerman that she was concerned about a possible endometrial flare or was experiencing any other health-related issues. *Id*. at ¶¶ 42-45. Dean Zimmerman denied Plaintiff's request to postpone her exam schedule due to her alleged computer failure. *Id*. at ¶ 40.

Later in the day on April 26, 2013, Plaintiff visited a physician at the University's medical clinic, who diagnosed her with an endometrial flare. *Id*. at ¶¶ 46-48. Consistent with the physician's recommendation, Dean Zimmerman postponed the exam Plaintiff was scheduled to

---

[1] The following facts, which are assumed to be true only for purposes of this motion, are taken from Plaintiff's Complaint and the exhibits attached thereto. To the extent there is a conflict between the allegations of the Complaint and an exhibit, the exhibit controls. *Schwarz v. Loyola Univ. Med. Ctr.*, 659 F. Supp. 2d 988, 991-92 (N.D. Ill. 2009).

1235911.1

take on Monday, April 29, 2013. *Id*. at ¶¶ 49-50. On April 29, 2013, Plaintiff again visited the University's medical clinic and received a letter from a different physician indicating that Plaintiff was experiencing the effects of an endometrial flare and that her condition warranted a postponement of her spring 2013 exams until her symptoms resolved. *Id*. at ¶¶ 52-54.

The next day, Tuesday, April 30, 2013, Dean Zimmerman sent an email to Plaintiff and others to whom Plaintiff had spoken about her exam schedule, in which he set forth a modified exam schedule for Plaintiff and set a final deadline of 5:00 p.m. on May 20, 2013 for Plaintiff to complete all of her outstanding course work, including three outstanding assignments from the fall 2012 term that Plaintiff had not yet completed. *Id*. at Ex. A. Dean Zimmerman indicated that, in setting this schedule and deadline, he had taken into account all of the physicians' recommendations that Plaintiff had provided. *Id*.

On May 2, 2013, Dean Zimmerman sent an email to certain other Law School and University personnel, notifying them that he had "given [Plaintiff] an exam schedule that she must follow" and asking that they direct Plaintiff to him or to a member of the University's medical staff if she sought further exam accommodations or said there was a medical emergency. *See id*. ¶¶ 62-67, Ex. B. Plaintiff did not meet the May 20, 2013 deadline, which resulted in Plaintiff receiving "F" grades for three of her courses. *Id*. at ¶ 86. Dean Zimmerman informed Plaintiff that these grades would remain on her transcript until she permitted the Northwestern IT department to conduct a forensic examination of her computer to determine if she had completed her assignments by the May 20, 2013 deadline. *Id*. at ¶¶ 92-94. Dean Zimmerman also requested that Plaintiff provide information to substantiate representations she had made in seeking a previous extension on one of those three assignments; specifically, that she had been hospitalized for multiple days in March 2013. *See id*. at ¶¶ 79-80, Ex. D. He also requested information of

3

Plaintiff's alleged computer failure in the spring of 2013, which was the basis for Plaintiff's earlier request for an extension of her spring 2013 exam schedule. *See id.* at ¶ 78, Ex. D.

Plaintiff met with Dean Zimmerman in July 2013 in response to his request for this documentation, but the documents that she provided were not responsive to Dean Zimmerman's request. *Id.* at ¶¶ 113, 116, 129, 130 133, Ex. D. Further, at this meeting, Plaintiff represented that the United States Attorneys' Office, where she was then working as an intern, had "encrypted" her personal computer such that she could not access her assignments that were due by May 20, 2013. *See id.* at Ex. D. Following their July 2013 meeting, Dean Zimmerman removed two of the three "F" grades on Plaintiff's transcript and permitted some of her assignments to be graded by her professors. *See id.* at ¶ 143. Because Plaintiff had not permitted the IT department to verify the properties of another assignment she sought to submit for grading, however, Dean Zimmerman did not remove one of the "F" grades from her transcript or the hold on Plaintiff's enrollment for the fall 2013 semester. *Id.* at ¶¶ 145-46, Ex. D.

On August 9, 2013, Plaintiff requested a leave of absence and also informed Dean Zimmerman she would be filing a formal grievance with the University. *Id.* at ¶¶ 148, 159, Ex. C. Dean Zimmerman informed Plaintiff that, to return from leave, she would need to (1) provide information sufficient to verify her representations regarding her alleged overnight hospitalizations and computer problems during the spring of 2013 and (2) permit the Law School's IT department to contact the United States Attorneys' Office IT department to verify whether it had encrypted files on Plaintiff's personal computer containing her Law School assignments. *Id.* ¶ 149.

Later in August of 2013, Plaintiff delivered records to Dean Zimmerman, which she claimed provided verification of her overnight hospitalizations and computer problems during

4

the spring of 2013. *Id*. at ¶¶ 160-163. After reviewing the hospital records that Plaintiff provided, Dean Zimmerman informed Plaintiff that they did "not look like one[s] that [he had] seen before" from the hospital in question. *Id*. at ¶ 164, Ex. D. Accordingly, he requested the name and contact information of an individual at the hospital who could verify the documents, as well as a release to allow that person to speak with him. *Id*. at ¶ 165, Ex. D. Plaintiff declined to provide this information. *Id*. at ¶ 166, Ex. D.

In early September, 2013, Plaintiff filed an internal grievance with the University's Office of Equal Opportunity and Access. *Id*. at ¶ 167. In September 2013, Dean Zimmerman approved Plaintiff's request for a leave of absence. *Id*. at ¶ 171, Ex. D. In doing so, he also set forth in writing the academic conditions Plaintiff was required to meet in order to return from leave. *Id*. at ¶ 173, Ex. D. Those conditions were the following:

- That Plaintiff provide the contact information for an individual at the hospital who could verify the documents Plaintiff provided relating to her hospitalizations in March 2013;
- That Plaintiff provide documents to verify the representations she had made regarding her computer issues in the spring of 2013 in seeking an extension of her exam schedule; and
- That Plaintiff co-operate with the Law School IT department to verify the accuracy of the representations she had made regarding the encryption of her computer files by the United States Attorneys' Office.

*Id*. at ¶ 174, Ex. D. In November 2013, Plaintiff notified Dean Zimmerman that she intended to return from leave. *Id*. at ¶ 183. In response, Dean Zimmerman reminded Plaintiff of the above academic conditions that she would need to satisfy prior to returning. *Id*. at Ex. F. Plaintiff has not yet satisfied the University's conditions for her return and remains on leave.

Although Plaintiff alleges that Dean Zimmerman accused her of violating the University and Law School's code of conduct at this time, she acknowledges that no charges of any type have ever been brought against her. *Id*. at ¶¶ 152-55, 177. In July 2014, Plaintiff filed this lawsuit

1235911.1

asserting a number of federal and state claims against Northwestern University and Dean Zimmerman. Plaintiff's claims in Counts XI and XIII-XV are the subject of Defendant's motion to dismiss.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, . . . formulaic recitation[s] of elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly,* 550 U.S. at 555, 557 (internal citations omitted).

## ARGUMENT

**I.    Plaintiff Fails to State a Claim for Breach of Contract (Count XI).**

To state a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). In Count XI of the Complaint, Plaintiff alleges that the University's Student Handbook, Law School Rules and Regulations, and procedures of the Student Affairs Office of Student Conduct and Conflict Resolution (which she refers to collectively as the "Rules") "form part of" her alleged contract with the University. Compl. at Count XI, ¶¶ 75, 77. She alleges that the University breached its contract with her in two ways:

- By "failing to afford [her] the due process procedures set forth in its Rules for suspected violations of academic integrity and violations of the Student Code of Conduct;" and

- By "failing to promptly investigate or resolve Plaintiff's discrimination grievance as set forth in its Rules."

*Id.* at Count XI, ¶¶ 80, 81. As an initial matter, Plaintiff's contract claim must be dismissed for failure to attach to the Complaint a copy of all of the documents that form the basis of her contract claim. *See Cogswell v. CitiFinancial Mortg. Co., Inc.*, 624 F.3d 395, 402 (7th Cir. 2010). For this reason, and because Plaintiff has not alleged – and cannot allege – the essential elements of a breach of contract claim for the reasons set forth below, Count XI should be dismissed in its entirety with prejudice.

### A.    Plaintiff fails to state a claim for breach of the Law School's procedures for resolving alleged academic integrity violations.

Plaintiff first contends that the University breached its contract with her by "failing to afford [her] the due process procedures set forth in its Rules for suspected violations of academic integrity and violations of the Student Code of Conduct." Compl. Count XI, ¶ 80. More specifically, Plaintiff bases her breach of contract claim on her allegations that she has not received written notice or a hearing with respect to any suspected violations of the University's academic integrity policies. *Id.* at ¶¶ 179-80. In support, she relies upon an excerpt from the 2012-2013 Northwestern University Student Handbook labeled "Academic Conduct Policies." *See id.* at ¶ 176 & Ex. E.

Plaintiff's contract claim fails, however, because she has not identified any valid contractual promise that she alleges the University has breached. Notably, Plaintiff specifically alleges that *no charges have been brought against her for suspected violations of the Law School's academic integrity policy. Id.* at ¶¶ 155, 177. Any provisions governing how an investigation should proceed *after* such a charge has been brought therefore simply do not apply.

7

1235911.1

Plaintiff identifies no contractual obligation that the University provide her either written notice or a hearing *before* a charge of a suspected academic integrity violation has actually been brought.

Plaintiff's claim also fails because she has not plead actual damages or alleged facts to demonstrate that any breach of contract by Defendants proximately caused Plaintiff's alleged damages, as required under Illinois law. *See, e.g., Geisler v. Everest Nat'l. Ins. Co.*, 980 N.E.2d 1170, 1187 (Ill. App. Ct. 2012). *Feldstein v. Guinan*, 499 N.E.2d 535, 537 (Ill. App. Ct. 1986) ("Speculative damages or damages not the proximate result of [a] breach will not be allowed."). For these reasons, Plaintiff's breach of contract claim fails as a matter of law and must be dismissed.

**B.      Plaintiff fails to state a claim for breach of the University's procedures governing the investigation of internal discrimination grievances.**

Plaintiff also alleges that the University breached its contract with her by "failing to promptly investigate or resolve Plaintiff's discrimination grievance as set forth in its Rules." Compl. at Count XI, ¶ 81. More specifically, she alleges that while the University's Office of Equal Opportunity and Access's grievance procedures provide that "[i]nvestigations will be concluded as expeditiously as possible and are usually completed within 30-60 days, though this may vary based on the availability of witnesses, the scope of investigation, or unforeseen circumstances," the University took over nine months to investigate her grievance. *See id.* at ¶¶ 189-90. The University's grievance policies and procedures cannot form the basis of a breach of contract claim, however, as they simply reiterate the University's legal obligation to investigate claims of unlawful discrimination. *See Moehling v. W.E. O'Neil Constr. Co.*, 170 N.E.2d 100, 106 (Ill. 1960); *Doe v. St. Louis Univ. Sch. of Med.*, No. 4:12CV905SNLJ, 2013 WL 1305825, at *14 (E.D. Mo. Mar. 28, 2013) (dismissing student contract claim based upon alleged obligations

to comply with disability laws and "to assist and accommodate" student because alleged promise simply reiterated pre-existing duty).

Additionally, Plaintiff again has not identified any contractual promise the University allegedly breached with regard to its investigation of her internal grievance. The statement that "[i]nvestigations will be concluded as expeditiously as possible and are usually completed within 30-60 days, though this may vary based on the availability of witnesses, the scope of investigation, or unforeseen circumstances" does not come close to being a binding contractual promise. *See Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979) (provision stating that instructors should periodically inform students of their progress was not a binding contractual obligation but only an unenforceable expression of intention); *Eisele v. Ayers*, 381 N.E.2d 21, 26 (Ill. App. Ct. 1978) (finding that statements in a medical school catalog reserving to defendant university the right to raise tuition "without notice" or "on short notice" were "lacking in the certainty necessary to impose a binding obligation" on the university). Finally, Plaintiff has not alleged she sustained any damages as a direct result of the University's alleged breach of its investigation procedures, which is an essential element of a breach of contract claim. *Feldstein*, 499 N.E.2d at 537. For all of these reasons, Plaintiff's breach of contract claim based on the University's grievance procedures also fails as a matter of law.

### C. Plaintiff has not plead the "arbitrary and capricious" conduct required to allege a student contract claim under Illinois law.

Plaintiff's breach of contract claims must be dismissed for an even more fundamental reason: she has not alleged any facts to support her conclusory allegation that the University's exercise of its academic judgment was "arbitrary and capricious." *Harris v. Adler Sch. Of Prof'l Psychology*, 723 N.E.2d 717, 720 (Ill. App. Ct. 1999). Under Illinois law, courts will not review a private university's decisions regarding student performance or conduct unless the decision

9

was "arbitrary and capricious" – which Illinois courts have defined as lacking "any discernible rational basis." *Id*.; *Bilut v. Northwestern Univ.*, 645 N.E. 2d 536, 542-43 (Ill. App. Ct. 1994). This deferential standard stems from a deep judicial "reluctance to interfere with the academic affairs of a private college or university." *Bilut*, 645 N.E. 2d at 543.

Moreover, Illinois courts have cautioned that "[a] plaintiff's burden of establishing arbitrary and capricious conduct on the part of a private college or university . . . is a heavy one." *Id*. Conclusory accusations that a university's conduct was "arbitrary and capricious" are insufficient. *Frederick v. Northwestern Univ. Dental Sch.*, 617 N.E.2d 382, 387-88 (Ill. App. Ct. 1993); *see also Harris*, 723 N.E.2d at 720. Voicing disagreement with a university's decision, or arguing that such decision was unwise, mistaken, or procedurally erroneous, is also insufficient to state a claim. *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699-700 (Ill. App. Ct. 2004). Even a violation of a university's catalogs or handbooks, in and of itself, would be insufficient to establish arbitrary and capricious conduct. *See id*. Rather, to warrant judicial review, a university's decision must be completely irrational, such that the university arguably "did not exercise its academic judgment at all." *See id*.

Analyzed against this standard, Plaintiff's contract claim is non-justiciable. The crux of Plaintiff's contract claim is her disagreement with the conditions the University has determined she must meet in order to return from her leave of absence and the University's determination that she has not yet met those conditions. *See* Compl. at Exs. D & F. While Plaintiff asserts the conclusion that these decisions were "arbitrary and capricious," that is not remotely sufficient to state a cognizable claim under well-established Illinois law. *See, e.g., Raethz*, 805 N.E.2d at 699-700. In short, it is apparent from the Complaint that this Court is being asked to substitute its judgment for that of the University with regard to the academic conditions that have been placed

10

on Plaintiff's ability to return from her current leave of absence. The Complaint provides no basis for the Court to review the University's academic judgments, and Count XI should therefore be dismissed with prejudice for this reason as well.

## II. Plaintiff Also Fails to State a Claim for Defamation (Count XIII).

To state a claim for defamation, a plaintiff must allege facts demonstrating that: (1) the defendant made a false statement of fact about the plaintiff; (2) the defendant made an unprivileged publication of the statement to a third party; and (3) that the publication caused damages to the plaintiff. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). In Illinois, there are two forms of defamation: defamation *per se* and defamation *per quod*. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 455 (Ill. App. Ct. 2010). "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Green*, 234 Ill. 2d at 491-92. If a statement does not meet this standard, a plaintiff may proceed with a claim for defamation *per quod* if she pleads and proves "that she sustained actual damage of a pecuniary nature." *Kurczaba v. Pollock*, 742 N.E.2d 425, 433 (Ill. App. Ct. 2000). Here, the allegations of the Complaint are insufficient to state a claim under either theory.

For a statement to be defamatory, it must involve an assertion of fact. Under Illinois law, "only statements capable of being proven true or false are actionable; opinions are not." *See Coghlan v. Beck*, 984 N.E.2d 132, 145 (Ill. App. Ct. 2013) (quoting *Moriarty v. Greene*, 732 N.E.2d 730, 739 (Ill. App. Ct. 2000)). Whether or not a statement is an opinion or one of fact is a question of law. *Brennan v. Kadner*, 814 N.E.2d 951, 957 (Ill. App. Ct. 2004). This inquiry hinges on whether the statement is capable of objective verification. *Hopewell v. Vitullo*, 701 N.E.2d 99, 103 (Ill. App. Ct. 1998).

Plaintiff's defamation claim is based solely on the email that Dean Zimmerman sent to other administrators and staff on May 2, 2013, which is attached to the Complaint as Exhibit B.

1235911.1

More specifically, Plaintiff alleges that the following two statements in that email were defamatory:

- That Plaintiff "has been uncooperative, evasive and not forthcoming in her representations to law school and University personnel;" and

- That Dean Zimmerman had "given [Plaintiff] an exam schedule that she must follow . . . [and Plaintiff] has been actively looking for anyone who will give her a different answer."

Compl. at Count XIII, ¶ 96 & Ex. B. These statements are not remotely sufficient to state a claim of defamation *per se*.

As an initial matter, they do not fit within any of the categories of defamation *per se* because Plaintiff is not a member of a profession and they do not relate to her status as an employee. *See Green*, 234 Ill. 2d at 491-92; *Moore*, 932 N.E.2d at 455. In addition, Plaintiff's defamation claim fails because all of the allegedly defamatory statements are nonactionable. For example, the statement that Plaintiff had been "uncooperative, evasive, and not forthcoming" is quintessential opinion. As a result, that statement cannot be defamatory as a matter of law. The second statement is simply not defamatory because it can be innocently construed and is not otherwise defamatory.

Indeed, Illinois courts consistently dismiss defamation claims based on statements far more critical than those identified in the Complaint because the statements are expressions of opinion. *See, e.g.*, *Coghlan*, 984 N.E.2d at 148-49 (statements that plaintiff (1) "pocketed the money," (2) was a "corrupt director," (3) "used bully tactics to try to gain yet more money," (4) "failed to give the deliverable that was contracted for," and (5) was operating a "fraud machine" all constituted nonactionable opinion); *Rose v. Hollinger Int'l, Inc.*, 889 N.E.2d 644, 645, 653-54 (Ill. App. Ct. 2008) (statements that plaintiff "wrought damage" to his employer's finances, reputation, relationships, morale, and quality of its editorial product were nonactionable

opinion); *Hopewell*, 701 N.E.2d at 102-105 (statement that the plaintiff was "fired because of incompetence" constituted nonactionable opinion).

Similarly, Illinois courts have also dismissed defamation claims where, as here, the allegedly defamatory statements can be innocently construed or are otherwise not defamatory as a matter of law. *See Green v. Trinity Int'l Univ.*, 801 N.E.2d 1208, 1084, 1212, 1220 (Ill. App. Ct. 2003) (statements that university professor was "rude, abrasive, and even acerbic" in class; "devoted a large amount of class time to non-course considerations"; and was "unprofessionally candid with students about matters not directly related to class materials" either "constitute[d] nonactionable opinion" or were capable of innocent construction); *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 672-73, 676 (Ill. App. Ct. 2000) (statements alleging that professor "brought personal problems, including her fertility and psychiatric difficulties, into the workplace"; "could not work well with colleagues"; that meetings with her were "uniformly unpleasant"; and that she "appeared to wheedle, persuade, nag, and domineer" not actionable).

Plaintiff's claim of defamation *per quod* fails for the additional reason that she has not alleged extrinsic facts to show how these statements were allegedly defamatory or alleged special damages as required under Illinois law. *See Walker v. Braes Feed Ingredients, Inc.*, No. 02 C 9236, 2003 WL 1956162, at *4 (N.D. Ill. Apr. 23, 2003); *Kurczaba*, 742 N.E.2d at 433-34 ("Illinois courts have consistently stated that general allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*."). Here, Plaintiff has alleged only damage to her reputation and unspecified monetary damages, which are precisely the types of general allegations that Illinois courts have consistently found insufficient. *Kurczaba*, 742 N.E.2d at 433-34.

For all of these reasons, Plaintiff cannot state a claim of defamation against either Defendant, and Count XIII should therefore be dismissed with prejudice.

### III. Plaintiff's Claim for Public Disclosure of Private Facts Also Fails (Count XIV).

The tort of public disclosure of private facts protects against the disclosure of "intimate details the publicizing of which would be not merely embarrassing and painful but deeply shocking to the average person subjected to such exposure." *Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 941 (N.D. Ill. 1998). To state a claim under this theory, Plaintiff must allege that (1) publicity was given to the disclosure of private facts; (2) the facts were private, not public; (3) the matter made public was such as to be highly offensive to a reasonable person; and (4) the matter publicized was not one of legitimate public concern. *See Walker*, 2003 WL 1956162, at *5.

Plaintiff's claim of public disclosure of private facts is based solely on Dean Zimmerman's May 2, 2013 email. Contrary to Plaintiff's conclusory misrepresentations, however, Dean Zimmerman's email does not contain any information about Plaintiff that is "private" or otherwise protected from disclosure. *See* Compl. at Ex. B. Indeed, the email in question contains no private facts about Plaintiff, much less any facts the disclosure of which would be "highly offensive" or "deeply shocking" to a reasonable person. Accordingly, because Plaintiff cannot establish the elements of a claim of private disclosure of public facts as a matter of law, Count XIV should be dismissed with prejudice.

### IV. Plaintiff Has Also Failed to State a Claim for Tortious Interference with Contract (Count XV).

In Count XV, Plaintiff alleges that she had a contract with her private psychiatrist, Dr. Elise Rehn; that the University communicated with Dr. Rehn despite not being authorized to do so; and that as a result of these communications, Dr. Rehn breached her contract with Plaintiff.

14

Compl. at Count XV. Plaintiff's allegations fail to state an actionable claim of tortious interference with contract against the University. *See Olaf v. Christie Clinic Ass'n*, 558 N.E.2d 610, 613-14 (Ill. App. Ct. 1990). In particular, Plaintiff cannot establish the existence of a valid and enforceable contract between her and her private psychiatrist. "Unlike the right to receive benefits of a contract, the right to engage in a physician-patient relationship is not absolute but is instead terminable at will." *Id*. (finding no enforceable contract between a doctor and his patients). Under Illinois law, a defendant's inducement of the cancellation of an at-will contract cannot form the basis of a tortious interference with contract claim. *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005). Accordingly, Count XV fails as a matter of law and must be dismissed with prejudice.

<u>**CONCLUSION**</u>

For the reasons set forth above and in the accompanying motion, Defendants respectfully request that this Court dismiss Counts XI, XIII, XIV and XV of Plaintiff's Complaint with prejudice for failure to state a claim.

Respectfully submitted,

s/Scott L. Warner - 06231380
One of the Attorneys for Defendants
NORTHWESTERN UNIVERSITY and
CLIFFORD ZIMMERMAN

Scott L. Warner (No. 06231380)
Gwendolyn B. Morales (No. 06297233)
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated: September 2, 2014

1235911.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on September 2, 2014, I electronically filed the foregoing

DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOITON TO DISMISS

COUNTS XI, XIII, XIV, and XV OF THE COMPLAINT with the Clerk of the Court using the

CM/ECF system to the following:

        Jill Calian
        Rachael Gross
        Calian & Gross, LLP
        1940 Sherman Avenue, Suite A,
        Evanston, IL 60201


        <u>s/Scott L. Warner-06297233</u>
        slw@franczek.com

        FRANCZEK RADELET P.C.
        300 South Wacker Drive
        Suite 3400
        Chicago, IL 60606
        312.986.0300

1235911.1