# **List of Exhibits**

Exhibit A....................................April 30, 2013 email from Dean to Plaintiff

Exhibit B ..................................May 2, 2013 defamatory email from Dean to 23 Recipients

Exhibit C ..................................Plaintiff's original request for a Leave of Absence

Exhibit D ................................ Dean's alteration of Plaintiff's request for a Leave of Absence

Exhibit E ..................................Northwestern University Student Handbook 2012-2013

Exhibit F ..................................Dean's Conditions for Plaintiff's return from Leave of Absence

# Exhibit A

**Clifford Zimmerman** <c-zimmerman@law.northwestern.edu>                    Tue, Apr 30, 2013 at 5:55 PM
To: Annie Liu <annie.liu@nlaw.northwestern.edu>
Cc: Rob Durr <RDurr@northwestern.edu>, Diane Lai Sheong Lin <d-lin2@northwestern.edu>, Timothy G Montgomery
<timothy-montgomery@northwestern.edu>

Annie -

I have cc'd everyone within the University with whom you have spoken or tried to speak with about your exam
schedule so that we are all on the same page. I write to recount where we are at, what we can do (or have done),
and what we cannot, as well as to identify your responsibilities. Further, I have taken into account all of the notes you
have sent in.

Last Friday morning, you and I met at your request to talk about scheduling – both your Spring exams and
assignments outstanding from the Fall term. (The day before you raised the issue that your computer failed and was
at the Apple store, that you lost your outlines, and could not get them back.) You told me that you had gotten
outlines from classmates. Aside from physical health issues you raised earlier in the semester (that I learned of from
a faculty member), this was the only problem that you raised. As we talked through the schedule, I made clear to you
that we do not accommodate for computer problems. Students are expected to back up files, and the law school will
provide a loaner for an exam itself (or longer if the student is in the laptop program). (Just this past weekend I turned
down another student's request for an extension on a scheduled exam when their computer died. The student dealt
with it and took the exam on time.)

In our conversation, as it became clear that you wanted to move your scheduled exams from this week (M and Th) to
next week and that I was not going to do that because your computer failed, you told me that you would become ill if
you had to prepare for these exams, particularly if you had to study around the clock. You left our meeting telling me
that you were going to see your doctor to get anxiety medication and asking what to do when you had a meltdown
this weekend. I told you to contact me, which is exactly the same communication I have been telling you to do since
last Spring.

Rather than doing what you said and starting to study, you went to Dr. Au for a medical excuse note, then later to
CAPS seeking from Dr. Durr what you did not get from me. Around 5 pm, Dr. Durr and I spoke while you were in his
office. At that time, I only agreed to postpone the Monday April 29th exam. And that postponement was predicated
on your commitment to complete some other outstanding work (paper or exam) in the time period in which you
would have been studying for the Monday exam.

You cannot create a meltdown of your physical and/or mental well-being in order to obtain a desired schedule for
work to be done. That is not only unprofessional and manipulative, but also indicates serious issues in need of
treatment (which I will leave to others to determine). In the Friday afternoon conversation, Dr. Durr related to me
that you said that your Endometriosis was flaring due to your current menses period. However, when we spoke in
the morning you did not raise any new or current medical or mental health issues to me, nor does Dr. Au's note from
that day confirm any either.

If you cannot cope with your computer failing, if you cannot manage your academic enrollments, and/or if you cannot
maintain your mental and physical well-being, then you need to make the appropriate adjustments. Our program of
study has flexibility and boundaries, and we are at the boundaries with your situation. You were unable to complete
the Spring 12 term, you took on a summer position rather than devoting time to self-care, you have not completed 3
courses from the Fall term, you are taking a one course lighter load during the Spring 13 term, and you have now

missed your first scheduled exam. In many respects, you appear to be in exactly the same position as you were[Exhibit 16] towards the end of the Spring 12 term where the challenges of the term still existed and you had already made a summer commitment. This is simply not an acceptable pattern of behavior, and cannot continue if you are to succeed in the legal profession.

The study of law is serious and demanding, and you have not been able to complete a full term in a timely fashion for 3 consecutive semesters. This is wholly inconsistent with our program of study, and any further adjustment would change the program of study. In light of your representations, behaviors, medical notes, and existing accommodations, here is how you must proceed:

    - you must not ask for any more extensions on your currently scheduled exams or assignments;
    - you must take your Constitutional Law exam on Friday May 3rd at 9 am;
    - you must take your Property exam on Tuesday May 7th at 9 am; and
    - you must complete all of your outstanding course work by 5 pm on Monday May 20th.

Your failure to complete any part of this schedule by the date set will result in an F in the course. If you choose to enter the journal writing competition, then you will start at 5 pm on Monday May 20th and must complete that by Noon on Monday May 27th. Finally, given all of the challenges that you have experienced, I strongly urge that you receive and follow all possible physical and mental health treatment and counseling.

Cliff.

Clifford S. Zimmerman
Associate Dean and Dean of Students
Clinical Associate Professor of Law
Northwestern University School of Law
375 E. Chicago Ave.
Chicago, 60611
312-503-7043
c-zimmerman@law.northwestern.edu

# Exhibit B

**From:** Clifford Zimmerman
**Sent:** Thursday, May 02, 2013 7:42 AM
**To:** Maureen M Stratton; Ernest Perez; Lesley Kagan Wynes; Adi Altshuler; Susan Michelle Spies Roth; Jamie Louise Darney; Barbara M Reiffman; Lauren L. Treutler; Sarah McGinley; James Lupo; Jason Kaiser; Mary L Lyons; Rachel Mastine; Jason Moy; Charlene Pineda; Angie T Roberts; David M Diamond; Puja Singh Patel; Pascale J Bishop; Timothy G Montgomery
**Cc:** Rob Durr; Daniel B Rodriguez; Roberta A Baer
**Subject:** notice regarding a student

Good morning everyone -

I am working with a student, Annie Liu, who has been uncooperative, evasive, and not forthcoming in her representations to law school and University personnel. I have given her an exam schedule that she must follow.

I write because she has been actively looking for anyone who will give her a different answer. If she approaches you to meet with someone other than me, you need to direct her to me or to Rob Durr (who is cc'd here). If she asks for an exam accommodation, you need to direct her to me or Rob. If she says it is a medical emergency, you need to tell her to call 911 or go to the emergency room.

Thanks.

Cliff.

Clifford S. Zimmerman
Associate Dean and Dean of Students
Clinical Associate Professor of Law
Northwestern University School of Law
375 E. Chicago Ave.
Chicago, 60611
312-503-7043
c-zimmerman@law.northwestern.edu

1

# Exhibit C

# NORTHWESTERN UNIVERSITY SCHOOL OF LAW
## OFFICIAL TRANSFER, PERMANENT WITHDRAWAL, TEMPORARY LEAVE OF ABSENCE

USE THIS FORM FOR:
- **TRANSFER**: STUDENTS WHO ARE WITHDRAWING FROM SCHOOL AND TRANSFERRING TO ANOTHER LAW SCHOOL.
- **PERMANENT WITHDRAWAL**: STUDENTS WHO DECIDE TO LEAVE SCHOOL WITH NO PLAN TO RESUME THEIR STUDIES.
- **TEMPORARY LEAVE OF ABSENCE**: STUDENTS WHO WANT TO TEMPORARILY WITHDRAW FROM THE LAW SCHOOL BUT PLAN TO RETURN TO THEIR STUDIES AT A LATER DATE.

THE FOLLOWING POLICY APPLIES TO PERMANENT WITHDRAWAL AND TEMPORARY LEAVE OF ABSENCE:
- **WITHDRAWAL FROM COURSES PRIOR TO THE DEADLINE TO DROP** – A TRANSCRIPT NOTATION WILL APPEAR INDICATING THE WITHDRAWAL AND DATE.
- **WITHDRAWAL FROM COURSES AFTER THE DEADLINE TO DROP** – A TRANSCRIPT NOTATION WILL APPEAR INDICATING THE WITHDRAWAL AND DATE, AND A "W" GRADE WILL BE ASSIGNED TO EACH COURSE FOR THE QUARTER/SEMESTER.
- THE DATE THIS FORM IS RETURNED WILL BE CONSIDERED THE OFFICIAL DATE USED FOR COMPUTING ANY TUITION ADJUSTMENT ACCORDING TO THE POLICY FOUND IN THE STUDENT FINANCIAL REGULATIONS HANDBOOK, CHICAGO CAMPUS, available at http://www.northwestern.edu/sfs/index.html.

NAME  LIU  ANNIE                NU ID NO.  2701094
     LAST    FIRST    MIDDLE

PERMANENT
ADDRESS  600 N. McClurg Ct. #4306A          LOCAL ADDRESS  600 N. McClurg Ct. #4306A
         STREET & NUMBER                                    STREET & NUMBER

Chicago  IL  60611          Chicago  IL  60611
CITY    STATE  ZIP CODE     CITY    STATE  ZIP CODE

anniechenliu@gmail.com          (917) 371-0082
E-MAIL ADDRESS                   PHONE NUMBER

TRANSFER/WITHDRAWAL/LEAVE STARTING:  Fall SEMESTER/QUARTER  2013 YEAR
                                          (CIRCLE ONE)

**REASON FOR WITHDRAWAL** (CHECK ONE)

☐ TRANSFER              ☐ PERMANENT WITHDRAWAL          ☒ TEMPORARY LEAVE OF ABSENCE
                          ☐ MEDICAL REASONS               ☐ MEDICAL REASONS
_____           ☐ PERSONAL REASONS              ☐ PERSONAL REASONS
SCHOOL TRANSFERRING TO    ☐ OTHER _____         ☒ OTHER Please refer to
                                                          attached documents (Exhibit
                                                          A & B)

FOR A **TEMPORARY LEAVE OF ABSENCE**, IDENTIFY THE ANTICIPATED RETURN DATE: Fall or Spring 2014
                                                                          SEMESTER    YEAR

FOR A LEAVE OF ABSENCE, YOU MUST CONTACT THE DEAN OF STUDENTS AT LEAST SIX (6) WEEKS PRIOR TO THE BEGINNING OF THE TERM IN WHICH YOU PLAN TO RESUME STUDIES.  IF THE LEAVE IS FOR MEDICAL REASONS, THEN MEDICAL CLEARANCE WILL BE REQUIRED PRIOR TO ENROLLMENT.  WHILE ON LEAVE, IT IS YOUR RESPONSIBILITY TO MAINTAIN YOUR EMAIL ACCOUNT AND MONITOR COURSE REGISTRATION DEADLINES.  CONTACT STUDENT AFFAIRS IF YOU NEED ASSISTANCE.

I HAVE READ THE TUITION REFUND POLICY FOUND IN THE APPROPRIATE SCHEDULE OF CLASSES OR ON THE STUDENT FINANCIAL WEBSITE.

_____  08/22/13
STUDENT SIGNATURE  DATE

---

### REQUIRED SIGNATURES

PROGRAM OF STUDY:
☐ JD          ☐ JD-MBA
☐ LLM or LLM//KELLOGG
☐ LLM/INTL. HUMAN RIGHTS
☐ LLM TAX     ☐ E-LLM

Marcia Burns  8-22-13
STUDENT ACCOUNTS  DATE

_____  8-22-13
FINANCIAL AID  DATE
REQUIRED OF ALL STUDENTS WHO RECEIVE ANY AMOUNT OF FINANCIAL AID

_____  8-22-13
REGISTRATION & RECORDS  DATE

| DATE OF LAST DAY OF SCHOOL ATTENDANCE | | | | | |
|---|---|---|---|---|---|
| MONTH | DAY | CHECK PROPER TERM | | | SCHOOL YEAR |
| | | FALL | WINTER | SPRING | SUMMER | 20 __ -20 __ |

### REQUIRED DEAN'S SIGNATURES

_____  _____          _____  _____
DEAN OF STUDENTS - KELLOGG  DATE     DEAN OF STUDENTS - LAW  DATE
REQUIRED OF JD/MBA STUDENTS

                                     EFFECTIVE DATE: __/__/__

_____  _____           ☐ Check if SAR needed upon return
DIRECTOR OF INTERNATIONAL PROGRAMS  DATE
REQUIRED OF INTERNATIONAL STUDENTS

Original LOA Form                                                                    Exhibit A



# Request for a Voluntary Leave of Absence & Formal Grievance Procedure

Annie Liu <anniechenliu@gmail.com>                          Fri, Aug 9, 2013 at 4:16 AM
To: Cliff Zimmerman <c-zimmerman@law.northwestern.edu>
Cc: daniel.rodriguez@law.northwestern.edu, todd.adams@northwestern.edu


Dear Dean Zimmerman:


I am writing to request your permission to voluntarily take a temporary leave of absence ("LOA") from
Northwestern University School of Law ("the University"). I do not make this request lightly; indeed assuming
that you permit me the LOA, it will be at considerable financial, professional and emotional cost to me. I do so
only because I do not see how I can otherwise continue as a law student, subject to your authority and with this
unresolved conflict looming over us. Moreover, although I could attempt to interview for associate or law clerk
positions on my current transcript, my prospects for legal employment are significantly diminished.


You do not believe that I was sufficiently incapacitated by illness in the Spring of 2013 to justify the extension of
time on a paper that was accorded to me by Professor McMasters. Although I have previously provided you
with extensive, personal information about my illness during that time, you made a demand (in an email sent to
me on May 13, 2013) for *all* records related to my medical care during the Spring 2013 semester as well as all
records related to my computer failure during that term. You refused to narrow your request or specify the reason
for which you sought these documents. In retaliation for my decision to refrain from producing these confidential
records:

- You unilaterally imposed "F" grades in three of my classes in which I had outstanding papers (and would
  not allow the IT department to examine my computer to verify that the papers were completed prior to their
  due date);

- You refused to lift the "W" grade in my Summer Public Interest Practicum, even though other students in
  my situation have been permitted to withdraw from this course without incurring a "W" on their transcript;

- You did not permit a grade to be recorded for my Natural Resources course until *after* I provided you with
  a copy of my medical records, even though my work in that course had been completed on May 20th;

- You rendered it extremely difficult, if not impossible, for me to participate in the journal writing competition;
  and

- You placed a registration hold on my enrollment.

Despite your continued refusal to explain the reason you required review of my personal medical records, I
capitulated. I met with you on July 15th and July 16th. Professor Maureen Stratton, whose course I was enrolled
in during the Spring 2013 term, joined us for both meetings at your request. I asked that if I could have legal
counsel present with me during these meetings, but you denied my request. You also refused to allow a
representative from the Office of Services for Students with Disabilities ("SSD") to accompany me. Lastly, you
prohibited me from recording the meetings.


During these two meetings which took place over a span of 6 hours, I made available for your inspection my
intensely personal medical records which included information pertaining to my colonoscopy, endoscopy,
sigmoidoscopy, biopsy, ultrasounds, and other procedures involving the examination of my small intestine, large
intestine, rectum, stomach, uterus, ovaries, fallopian tubes, and other parts of the interior cavity of my body.

2 of 6                                                                               1 of 3

**Original LOA Form**

I also showed you documents evidencing my computer failure in the Spring of 2013.   Finally, I turned my computer over to one of the University's Information Technology Staff members ("IT staff member") for the limited purpose of verifying the timestamp on my outstanding papers, all of which were stored in a singular and isolated folder on my computer desktop.

It was not enough for you.

During our meeting, you inappropriately pried into my mental health history by asking me whether I had ever been diagnosed with depression.  (Professor Stratton advised me that I did not have to answer this question.)  You further intimated that you were privy to information that I had not been keeping my regular appointments with my physician at Meridian Psychiatric Partners— an assertion that is not true.  Moreover, you shared with me a document from the SSD which included confidential information about *another* law school student, thereby breaching her right to confidentiality.

In addition to interrogating me about the timestamps on my computer files, you pressured me to reveal the policies, provisions, and protocols used by the United States Attorney's Office for the Southern District of New York ("the U.S. Attorney's office") to control, monitor, and authorize access to files stored on its computer network.  You also permitted Northwestern Law's IT staff member to engage in an unauthorized search of my personal computer, which held copies of classified documents containing highly-sensitive government intelligence.  You even demanded that I allow Northwestern Law's IT staff member to speak directly to the U.S. Attorney's IT department, and you coerced me into telephoning the U.S. Attorney's Office (which I did, although no one answered).

Following our meeting, you permitted me to submit my papers for a final grade in Corporations and in Communication and Legal Reasoning II ("CLR II").  You also permitted my Natural Resources grade

(an A-) to be recorded on my transcript, and you removed the "W" for the Summer Public Interest Practicum course.  However, you did not permit me to submit my paper for a final grade in Conflict Management in Legal Practice ("Conflict Management").  You also denied my requests that I be allowed to participate in the journal writing competition along with the transfer students and that I be allowed to re-take final exams in my Constitutional Law and Property Law courses which I took while experiencing symptoms of my disability and the sedating effect of numerous medications.

As of today, I still have an "F" on my transcript for Conflict Management and an "IP" on my transcript for CLR II.

You now are maintaining that in order to remove the "F" grade, I need to provide you with additional medical records.  Since you have not articulated what specific additional documents you are requiring (beyond those I have already given you), I do not know with what else I must provide you, and I have no assurance that you will ever be satisfied with my submissions.  You have also demanded that whatever documentation I submit to you must be left in your possession.

My transcript is tarnished in a way that has made it all but impossible for me to interview for associate positions with law firms and legal clerkships with judges.  Moreover, our conflict has interfered with my ability to put adequate time and concentration into my summer employment at the U.S. Attorney's office.  The stress of this situation has been overwhelming and has continued to exacerbate my illness.  I therefore request that I be permitted to take a temporary LOA for a period of 1-2 semesters with the understanding that I will be allowed to re-enroll as a student in good standing.

**3 of 6**

**Original LOA Form**

Please let me know your decision as soon as possible.

Regrettably, my many efforts to cooperate and resolve this dispute have failed. The more I give you, the more you demand. With no apparent resolution in sight -- my academic record, my reputation and my aspirations for legal employment will continue to diminish. In an effort to salvage some value from my legal education, I have no choice but file a formal grievance with the University. You can expect to receive notice of my filing shortly.

Very truly yours,

Annie Liu

Original LOA Form                                                                                                Exhibit B



# Re: Request for a Voluntary Leave of Absence & Formal Grievance Procedure

**Annie Liu** <anniechenliu@gmail.com>                                                      Wed, Aug 21, 2013 at 2:29 PM
To: Cliff Zimmerman <c-zimmerman@law.northwestern.edu>
Cc: daniel.rodriguez@law.northwestern.edu

Dear Dean Zimmerman:

It is difficult to classify the complex difficulties that I am experiencing now under a concise heading — "Medical," "Personal," or "Other".   I refer you to my e-mail of August 9, 2013 for an explanation of the reasons that I am requesting a LOA from the law school.  That said, I suppose that I could best describe my predicament as "Other".  Additionally, the stress that you have imposed on me has exacerbated my physical condition, giving rise to medical concerns, but that is not the basis of my request for an LOA.

I do not understand why you did not request from me three months ago (in May 2013) the specific hospital and computer repair documents that you delineate in your most recent e-mail.  Instead you demanded that I share with you "*all* documents" that I had "related to" my "hospitalizations during the Spring 2013 semester (documents can include bills, medical reports, etc.)" as well as *all* documents that I had related to my "computer failure during the Spring 2013 semester (same thing, bills, invoices, etc.)"  (*See* your e-mail to me on 5/13/2013) (emphasis added)

When I asked if you would please explain the context for this extremely broad request, you replied, "That is the context."  (*See* your e-mail to me on 5/14/2013)  While I expressed a willingness to cooperate, I also told you that I was reluctant to share extremely personal medical records, particularly as they related to my gynecological health.  Despite my concerns, you pushed forward with your demands and took any number of punitive actions, including putting a hold on my enrollment and inputting failing grades on my transcript, in order to compel me to acquiesce.  You succeeded.

I wrote you an email on July 12, 2013, detailing the specific health records that I would be producing at our meeting for your review.  Still, you did not circumscribe the scope of your request for these records; instead you replied, "I'll see you on Monday at 2:00pm."  (*See* your e-mail to me on 7/12/2013)  On July 15th, 2013 I met with you and brought with me all the medical documents that I had in my possession and that I had informed you I would produce.

Now you express surprise that I brought you "[medical] test results and pictures and a bill" and that I did not intuit the narrow request that you are now making (for hospitalization records that show whether I was in the hospital on March 3, 4, 5th and on the 6th and 7th).  Had you been this specific to start with, much of the damage to my academic record and professional opportunities that I incurred over the summer might have been avoided.  In any event, I did not have the precise hospital records which showed these dates when we met.  I have had to go back to the patient records department at the hospital on at least four occasions seeking any records that could confirm my presence in the hospital on those dates.  I now have this documentation.

I will be sending you today by certified mail (for same day or next-day delivery) the following documents (7 pages total):

1.  Protected Patient Record from Northwestern Memorial Hospital Emergency Department (documenting hospitalization during 3/3/2013 – 3/5/2013) (2 pages)

    * Note: the content and date of this document match my statements in my e-mail of March 5, 2013 to Professor James McMasters.

2.  Protected Patient Record from Northwestern Memorial Hospital Emergency Department (documenting hospitalization during 3/6/2013 – 3/7/2013) (2 pages)

5 of 6                                                                                                           1 of 2

Original LOA Form                                                                                    Exhibit B

- • Note: the content and date of this document match my statements in my e-mail of March 7, 2013 to Professor James McMasters.

3. Apple Store Genius Bar Record (documenting computer issue on 4/24/13) (1 page)

   - • Note: I provided you with a copy of this record during our meeting on July 15, 2013.
   - • Note: The content and date of this document match my statements in my e-mail to you of April 25, 2013.

4. Apple Store Genius Bar Record (documenting computer issue on 4/25/13) (1 page)

   - • Note: I provided you with a copy of this record during our meeting on July 15, 2013.
   - • Note: The content and date of this document match my statements in my e-mail to you of April 25, 2013.

5. Apple Store Genius Bar Record (documenting computer issue on 3/29/13) (1 page)

   - • Note: The content and date of this document match my statements in my e-mail of April 1, 2013 to Professor Maureen Stratton.

I have stamped my computer records and patient records from the hospital Emergency Room **"Private and Confidential – Do Not Duplicate"** and request that you not copy, share, store, or distribute these confidential records to others. Please return these documents to me after you have reviewed them.

As to your third request, I disagree with your characterization of our conversation about my computer files, although I do agree that the law school IT representative made an unauthorized search of my computer using Spotlight, which searched not only the contents of my hard drive but also my personal email account and my phone text messages. During the course of our two-day meeting on July 15th and July 16th, I produced all three computer files and permitted the law school IT representative to verify the properties, including the timestamps, of each file. The timestamps associated with each file evidenced that none of the documents had been modified after the deadline. Do you have any evidence that I modified a paper after its due date? Are you saying that you cannot ascertain this fact without speaking with my former employer, the U.S. Attorney's Office for the Southern District of New York (USAO), about its encryption/security practices? The USAO has declined your request that have this conversation, and thus, I cannot comply with your demand. Moreover, such a conversation would only serve to further diminish my professional reputation with my former employer.

Please provide me with instructions on how to formalize my request for an LOA as soon as possible. Thank you.

Very truly yours,

Annie

# Exhibit D

# NORTHWESTERN UNIVERSITY SCHOOL OF LAW

Exhibit 115

## OFFICIAL TRANSFER, PERMANENT WITHDRAWAL, TEMPORARY LEAVE OF ABSENCE

**USE THIS FORM FOR:**
- **TRANSFER:** STUDENTS WHO ARE WITHDRAWING FROM SCHOOL AND TRANSFERRING TO ANOTHER LAW SCHOOL.
- **PERMANENT WITHDRAWAL:** STUDENTS WHO DECIDE TO LEAVE SCHOOL WITH NO PLAN TO RESUME THEIR STUDIES.
- **TEMPORARY LEAVE OF ABSENCE:** STUDENTS WHO WANT TO TEMPORARILY WITHDRAW FROM THE LAW SCHOOL BUT PLAN TO RETURN TO THEIR STUDIES AT A LATER DATE.

**THE FOLLOWING POLICY APPLIES TO PERMANENT WITHDRAWAL AND TEMPORARY LEAVE OF ABSENCE:**
- **WITHDRAWAL FROM COURSES PRIOR TO THE DEADLINE TO DROP** – A TRANSCRIPT NOTATION WILL APPEAR INDICATING THE WITHDRAWAL AND DATE.
- **WITHDRAWAL FROM COURSES AFTER THE DEADLINE TO DROP** – A TRANSCRIPT NOTATION WILL APPEAR INDICATING THE WITHDRAWAL AND DATE, AND A "W" GRADE WILL BE ASSIGNED TO EACH COURSE FOR THE QUARTER/SEMESTER.
- THE DATE THIS FORM IS RETURNED WILL BE CONSIDERED THE OFFICIAL DATE USED FOR COMPUTING ANY TUITION ADJUSTMENT ACCORDING TO THE POLICY FOUND IN THE STUDENT FINANCIAL REGULATIONS HANDBOOK, CHICAGO CAMPUS, available at http://www.northwestern.edu/sfs/index.html.

NAME _LIU_ _ANNIE_ NU ID NO. _2701094_
   LAST   FIRST   MIDDLE

PERMANENT ADDRESS _600 N. McClurg Ct., #4306A_   LOCAL ADDRESS _600 N. McClurg Ct., #4306A_
   STREET & NUMBER      STREET & NUMBER

_Chicago_ _IL_ _60611_   _Chicago_ _IL_ _60611_
   CITY   STATE   ZIP CODE      CITY   STATE   ZIP CODE

_anniechenliu@gmail.com_   _(917) 341-0082_
   E-MAIL ADDRESS      PHONE NUMBER

**TRANSFER/WITHDRAWAL/LEAVE STARTING:** _Fall_ SEMESTER/QUARTER _2013_ YEAR
   (CIRCLE ONE)

**REASON FOR WITHDRAWAL (CHECK ONE)**

☐ TRANSFER    ☐ PERMANENT WITHDRAWAL    ☒ TEMPORARY LEAVE OF ABSENCE
_____     ☐ MEDICAL REASONS    ☐ MEDICAL REASONS
SCHOOL TRANSFERRING TO    ☐ PERSONAL REASONS    ☐ PERSONAL REASONS
    ☐ OTHER _____    ☒ OTHER ~~_____~~

*See attached conditions for return.

**FOR A TEMPORARY LEAVE OF ABSENCE, IDENTIFY THE ANTICIPATED RETURN DATE:** _Fall or Spring_ _2014_
   SEMESTER   YEAR

FOR A LEAVE OF ABSENCE, YOU MUST CONTACT THE DEAN OF STUDENTS AT LEAST SIX (6) WEEKS PRIOR TO THE BEGINNING OF THE TERM IN WHICH YOU PLAN TO RESUME STUDIES. IF THE LEAVE IS FOR MEDICAL REASONS, THEN MEDICAL CLEARANCE WILL BE REQUIRED PRIOR TO ENROLLMENT. WHILE ON LEAVE, IT IS YOUR RESPONSIBILITY TO MAINTAIN YOUR EMAIL ACCOUNT AND MONITOR COURSE REGISTRATION DEADLINES. CONTACT STUDENT AFFAIRS IF YOU NEED ASSISTANCE.

I HAVE READ THE TUITION REFUND POLICY FOUND IN THE APPROPRIATE SCHEDULE OF CLASSES OR ON THE STUDENT FINANCIAL WEBSITE.

_[signature]_ _08/22/13_
STUDENT SIGNATURE   DATE

## REQUIRED SIGNATURES

PROGRAM OF STUDY:
☒ JD    ☐ JD-MBA
☐ LLM or LLM//KELLOGG
☐ LLM/INTL. HUMAN RIGHTS
☐ LLM TAX    ☐ E-LLM

_Marcia Burns_ _8-22-13_
STUDENT ACCOUNTS   DATE

_[signature]_ _8.22.13_
FINANCIAL AID   DATE
REQUIRED OF ALL STUDENTS WHO RECEIVE ANY AMOUNT OF FINANCIAL AID

| DATE OF LAST DAY OF SCHOOL ATTENDANCE | | | | | |
|---|---|---|---|---|---|
| MONTH | DAY | CHECK PROPER TERM | | | SCHOOL YEAR |
| 5 | | FALL | WINTER | SPRING ☒ | SUMMER | 20/_2_ -20_13_ |

_[signature]_ _8-22-13_
REGISTRATION & RECORDS   DATE

## REQUIRED DEAN'S SIGNATURES

_[signature]_ _[signature]_ _9/23/13_
DEAN OF STUDENTS - KELLOGG   DATE   DEAN OF STUDENTS - LAW   DATE
REQUIRED OF JD/MBA STUDENTS

_____   EFFECTIVE DATE: _8/22/13_
DIRECTOR OF INTERNATIONAL PROGRAMS   DATE
REQUIRED OF INTERNATIONAL STUDENTS   ☐ Check if SAR needed upon return

1 of 4

**Annie Liu Leave of Absence**
(attachment to leave of absence form)

**I. Nature of the Leave**

To the extent that this leave has a medical basis (even if only in part), you must comply with medical clearance as stated on the form.

**II. Academic conditions for return from leave of absence**

Three academic conditions must be fulfilled prior to return from leave.

1. Condition 1 – verification of medical records.

In an email of 8/12/13, Cliff Zimmerman wrote to Annie Liu the following:

> In your email of Tuesday, March 5, 2013, to Prof. James McMasters you stated, "I'm writing to you from the hospital. I was admitted on Sunday ... I am feeling better now and will be discharged tomorrow morning." In your email of Thursday March 7, 2013, to Prof. James McMasters you stated, "Writing to you again from the hospital. Had to come back here yesterday after class ... .". Your statements were the basis for a request by you and the granting of an extension by him of an assignment due date. You have been asked repeatedly to provide documents to substantiate your hospitalization on these dates. You have presented test results and pictures, and a bill that included no room charges. These documents are not responsive to the request.

On 8/22/13, Annie Liu fedexed documents to Cliff Zimmerman. On 8/26/13, Cliff Zimmerman wrote in an email to Annie Liu:

> I reviewed the documents titled "Northwestern Memorial Hospital Emergency Department." As this form does not look like one that I have seen before from the Emergency Department, please provide me with the name and contact information for someone at the hospital who can verify the documents, as well as provide that person with an appropriate release allowing them to speak with me.

**Open Issue:** As of 9/10/13, Annie Liu has not provided information responsive to this request. This information is needed in relation to the final grading of Annie Liu's work in Communication and Legal Reasoning for the Spring 13 term and must be provided prior to any return from leave.

2. Condition 2 – resolution of computer records.

In an email of 8/12/13, Cliff Zimmerman wrote to Annie Liu the following:

> In your email of April 1, 2013, to Prof. Maureen Stratton and in your email of April 25, 2013, to Dean of Students Cliff Zimmerman you stated that your computer crashed and was at the Apple Store for repair:
> a.  "My computer crashed (see picture in other email) this past Friday, and it's currently in repair at the Apple Store on Michigan." (to Prof. Stratton)
> b.  "Something went wrong with my computer last night, and the folks at the Apple store are holding on to it for repairs. ... I lost a lot of work on the original computer." (to Dean Zimmerman)

1

You also emailed what appears to be exactly the same picture to both. In your conversation with the Dean of Students you made no reference to the prior crash or a prior request of Prof. Stratton. Your statements were the basis for requests by you to Prof. Stratton to extend the due date on an assignment, and to Dean Zimmerman to extend the dates of exams scheduled the following week. You have been asked repeatedly to provide documents to substantiate your computer crashes on these dates. You brought in two sheets from the Apple store, the content and dates of which do not match your statements. These documents are not responsive to the request.

On 8/22/13, Annie Liu fedexed three (3) Apple Genius Bar documents to Cliff Zimmerman, dated 3/29/13, 4/24/13, and 4/25/13. The 3/29/13 document states that the "domputer [sic] will shut down at random" and the 4/24/13 document states that the "computer will intermittently shut down." The document from 3/29/13 indicates that Annie Liu's computer was brought in to the Apple store on Friday the 29th and that the necessary repairs would take 3-5 days. The document from 4/24/13 indicates that the repairs would be done on the "Same Day" and the "Repair Estimate" lists only "Evaluation" as what was done. The document from 4/25/13 indicates nothing about the state of the computer or any repairs needed or done to it.

**Open Issue:** An open issue remains as to whether or not these computer documents are consistent with Annie Liu's statements, made to the Dean of Students via email on 4/25/13 and in person on 4/26/13, requesting to extend her exam dates due to "Something went wrong with my computer last night, and the folks at the Apple store are holding on to it for repairs. … I lost a lot of work on the original computer."

3.   Condition 3 – the encrypted computer.

In an email of 8/12/13, Cliff Zimmerman wrote to Annie Liu the following:

> In the meetings between yourself, Prof. Stratton, and the Dean of Students, you asserted on the first day (July 15) that your workplace (the United States Attorney's office for the Southern District of New York) "encrypted" your computer such that you could not access your personal files on your personal computer. You represented that the IT people at your workplace were migrating the files you needed to present to us, to a file on your desktop so that you could show them to us. You stated that some files had migrated, but another or others had not yet migrated. On that same day, Steven Simmons from Law School IT examined the "migrated" files. Following our meeting with you, Law School IT told me that your representation on the first day did not make sense to them in terms of encryption and file access. On the second day, Steven Simmons again examined your personal computer and, in the context of our conversation about earlier versions of a paper, used Spotlight to search and found what appeared to be prior versions of your paper on your computer. You asked him to stop. Prof. Stratton and the Dean of Students questioned you about your statement the prior day that your personal computer was encrypted such that you could not access your personal files. You first denied that you had said that your computer was encrypted, then you said that you did not know what the term meant. Prof. Stratton and the Dean of Students then explained the IT concerns and said that the standard way to address such an issue was to have the IT personnel from your workplace talk to the IT personnel at the Law School. You said that you would call the person who was doing the "migration" and you left a message. You took Steven Simmons' contact information to pass along to your workplace IT person so that they could talk. No one from your workplace IT has called Steven Simmons, or anyone else in the Law School IT department, to clarify what was and was not done to your personal computer and personal files and to corroborate the statements that you made to the Law School.

2

Exhibit 115

On 8/21/13, Annie Liu sent an email declining to comply with this request, stating, "The USAO has declined your request to have this conversation, and thus, I cannot comply with your demand."

**Open Issue:** An open issue remains as to the accuracy of Annie Liu's representation that her computer was encrypted and that she had to have the files migrated to her desktop by her work IT before Law School IT could verify the files. Also open is her subsequent refusal to cooperate with the Law School request for IT to understand the accuracy of her statements. In addition, Annie Liu previously provided a "draft" copy of her paper due in Conflict Management in Legal Practice (via email dated 1/8/13). On July 16, 2013, she did not cooperate allow the Law School IT department to verify the file properties of the file version she sought to submit for grading. Thus, she has not submitted a final paper for grading in that course and the F recorded on her transcript will remain.

### III. University and Law School processes:

Depending upon what is learned regarding the points outlined above, the Law School reserves the right to utilize University and/or Law School processes with respect to any possible violations of the University Code of Student Conduct or Law School Honor Code, including but not limited to concerns about failure to cooperate and dishonesty.

# Exhibit E

# Northwestern University
# Student Handbook 2012–13

NORTHWESTERN
UNIVERSITY

This statement broadly describes principles of student academic conduct supported by all academic programs and faculties of the University, both under-graduate and graduate (postbaccalaureate). More detailed standards of academic conduct, procedures, and sanctions are set forth by each of the schools. It is the responsibility of every member of the academic community to be familiar with the specific policies of his or her own school and to bear in mind relevant policies governing activities not directly addressed herein, such as internships, specific graduate programs, and University research.

## A. Basic Standards of Academic Integrity

Registration at Northwestern requires adherence to the University's standards of academic integrity. These standards may in any case be listed exhaustively, the following types of behavior are unacceptable.

1. *Cheating:* using unauthorized notes, study aids, or information on an examination; altering a graded work after it has been returned, then submitting the work for regrading; allowing another person to do one's work and submitting that work under one's own name; submitting identical or similar papers for credit in more than one course without prior permission from the course instructors.
2. *Plagiarism:* submitting material that in part or whole is not entirely one's own work without attributing those same portions to their correct source.
3. *Fabrication:* falsifying or inventing any information, data, or citation; presenting data that were not gathered in accordance with standard guidelines defining the appropriate methods for collecting or generating data and failing to include an accurate account of the method by which the data were gathered or collected.
4. *Obtaining an unfair advantage:* (a) stealing, reproducing, circulating, or otherwise gaining access to examination materials prior to the time authorized by the instructor; (b) stealing, destroying, defacing, or concealing library materials with the purpose of depriving others of their use; (c) unauthorized collaborating on an academic assignment; (d) retaining, possessing, using, or circulating previously given examination materials, where those materials clearly indicate that they are to be returned to the instructor at the conclusion of the examination; (e) intentionally obstructing or interfering with another student's academic work; or (f) otherwise undertaking activity with the purpose of creating or obtaining an unfair academic advantage over other students' academic work.
5. *Aiding and abetting academic dishonesty:* (a) providing material, information, or other assistance to another person with knowledge that such aid could be used in any of the violations stated above, or (b) providing false information in connection with any inquiry regarding academic integrity.
6. *Falsification of records and official documents:* altering documents affecting academic records; forging signatures of authorization or falsifying information on an official academic document, grade report, letter of permission, petition, drop/add form, ID card, or any other official University document.
7. *Unauthorized access to computerized academic or administrative records or systems:* viewing or altering computer records, modifying computer programs or systems; releasing or dispensing information gained via unauthorized access, or interfering with the use or availability of computer systems or information.

## B. Due Process and Student Rights

In accordance with University statutes, the enforcement of academic integrity lies with the faculties of the University's individual schools and shall be in accordance with the procedures and provisions adopted by each individual school. In all cases involving allegations of a violation of the standards of academic integrity, the student charged or suspected shall, at a minimum, be accorded the following rights:

1. Prompt investigation of all charges of academic dishonesty, to be conducted, insofar as possible, in a manner that prevents public disclosure of the student's identity. Such investigation may include informal review and discussion with an official of the school prior to bringing a charge, provided that such review does not compromise the rights of the student in the formal process.
2. Reasonable written notice of the facts and evidence underlying the charge of academic dishonesty and of the principle(s) of academic integrity said to have been violated.
3. Reasonable written notice of the procedure by which the accuracy of the charge will be determined.
4. Reasonable time, if requested, within which to prepare a response to the charge.
5. A hearing or meeting at which the student involved may be heard and the accuracy of the charge determined by a neutral decision maker.
6. Review of any adverse initial determination, if requested, by an appeals committee to whom the student has access in person. Generally, implementation of sanctions will be suspended until all appeals made by the student have been exhausted.
7. Final review of an unsuccessful appeal, if requested, by the provost or an advisory committee designated by the provost.

## C. Procedures

Suspected cases of charges of academic dishonesty should be reported to the course instructor, to the administration of the school under whose jurisdiction the suspected offense took place, or to any student authorized by that section to receive such complaints. Students charged with academic dishonesty may not change their registration in a course in which the charge is pending or in which a finding of academic dishonesty has been made. Procedures of investigation, adjudication, and appeal may vary from school to school. (Current practice does not involve reporting to a student, but instead to the course instructor or to a member of the dean's office in the appropriate school.)

## D. Sanctions

All proven cases of academic dishonesty should be penalized as appropriate under the circumstances. Sanctions other than a reduced or failing grade should be imposed by the school in which the student is enrolled. The imposition of any sanction other than a private reprimand should include a statement of reasons supporting its severity. A student may appeal any finding or sanction as specified by the school holding jurisdiction. Sanctions may include but are not limited to:

1. Reduced or failing grade.
2. A letter of reprimand.
3. A defined period of probation, with or without the attachment of conditions.
4. Withdrawal of University funding.
5. A defined period of suspension, with or without the attachment of conditions.
6. Exclusion from the University.
7. Notation on the official record.
8. Revocation of an awarded degree.
9. Any appropriate combination of 1–8 above.

(Additional sanctions may include, but are not limited to, denial of academic honors.)

For more information about academic integrity at Northwestern, please see www.northwestern.edu/provost/students/integrity.

# Exhibit F

**Clifford Zimmerman** <c-zimmerman@law.northwestern.edu>
To: Annie Liu <anniechenliu@gmail.com>                                    Mon, Nov 25, 2013 at 9:00 AM

Annie -

Thank you for your email giving timely notice of your desire to return from leave for the Spring 2014 term. As you know, you have to fulfill academic conditions on your return prior to enrollment, as well as receive medical clearance given that you indicated your leave was, in part, medical (see the attached leave form that you previously submitted). For the academic conditions, you must provide that information to me for review. For the medical clearance and depending on the basis for your leave (physical or mental health), you must first meet with your treating medical professional(s) (or if you do not have any, then see Dr. Jordana Friedman at Chicago Student Health or Dr. Roberta Baer in Chicago CAPS). Whomever evaluates you for medical fitness to return to your studies will need to evaluate you, determine if you need to meet with any other medical professional(s) to complete medical clearance, and share their conclusion with me (you will need to sign a release for this). These reviews will take some time, thus the sooner you start these processes the better particularly given the time of year (exams, holidays, vacations, etc.). The academic conditions and medical clearance must be completed to the satisfaction of the law school prior to your enrollment in law school.

Cliff.

Clifford S. Zimmerman
Associate Dean and Dean of Students
Clinical Associate Professor of Law
Northwestern University School of Law
375 E. Chicago Ave.
Chicago, IL 60611
312-503-7043
c-zimmerman@law.northwestern.edu